THE CINCINNATI ENQUIRER, Appellee,

v.

CITY OF CINCINNATI, Appellant.

[Cite as *The Cincinnati Enquirer v. Cincinnati* (2001), 145 Ohio App.3d 335.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–010095.

Decided Aug. 24, 2001.

336

*Graydon Head & Ritchey* and *John C. Greiner*, for appellee.

*Fay D. Dupuis*, City Solicitor, and *Richard Ganulin*, Assistant City Solicitor, for appellant.

———————

PAINTER, Judge.

The court of common pleas held that the Urban Design Review Board ("UDRB"), a group of architectural consultants for the city, is a public body and must meet in public. The Ohio Sunshine Law, R.C. 121.22, compels public bodies to meet in public. We affirm.

This case originated in the Hamilton County Court of Common Pleas with the petitioner-appellee, *The Cincinnati Enquirer*, filing a petition for a writ of mandamus and an injunction against the respondent-appellant, the city of Cincinnati. *The Enquirer* sought to compel the city to prohibit the UDRB from meeting in private. The UDRB, created by a motion of the Cincinnati City Council in 1964, is a body consisting of four architects and a chairperson. Its purpose is to review all new construction projects in the Cincinnati Central Business District that are part of a contract between a developer and the city, and to make recommendations to and generally advise the Cincinnati City Manager on the acceptability of developers' plans.

The review process is required by standard language in contracts between the city and developers. The UDRB reviews a project at three distinct stages and then determines whether a design is appropriate for the urban context and whether the architecture is of a quality commensurate with the aspirations of the city's urban-renewal plan. Based on its review, the UDRB issues meeting minutes in which it makes recommendations regarding project approval to the Cincinnati City Manager.

The trial court, in its findings of fact, found that the UDRB review process requires the UDRB to make decisions. The court then held, as a matter of law, that the UDRB functions as a public body, as defined in R.C. 121.22(B). Under R.C. 121.22(C), then, all UDRB meetings are public meetings and must be open to the public.

The city appeals, raising two assignments of error. The first assignment has two parts—that the trial court's findings of fact were erroneous, and that the trial court erred by concluding that the meetings of the city manager's consultants had to be public. The second assignment is that the trial court abused its discretion by awarding, or not reducing, attorney fees to *The Enquirer*.

### I.   The Meetings Must be Open

The city argues that the trial court erroneously ruled that the UDRB review process requires that the UDRB make decisions. In reviewing a trial court's factual determinations, an appellate court will not reverse as long as the record contains some competent, credible evidence supporting the determinations.[1]

The trial court here based its findings of fact primarily on a stipulated record. The city argues that the record reflects that the UDRB is merely advisory to the city manager and has no decision-making authority that can bind

---

1. *Security Pacific Natl. Bank v. Roulette* (1986), 24 Ohio St.3d 17, 20, 24 OBR 14, 16–17, 492 N.E.2d 438, 440.

the city. That may or may not be true, but what the trial court ruled was that the UDRB simply makes decisions. The trial court found that the UDRB has to make many decisions in order to determine whether to recommend approval of a project. Whether the UDRB has the ultimate authority to decide matters is not controlling—the UDRB makes decisions in the process of formulating its advice.

In *Thomas v. White*,[2] the Ninth Appellate District held that a citizens advisory committee that made recommendations to and advised the Summit County Children Services Board was a decision-making body. A body that makes decisions only in the process of reaching consensus for recommendations to a higher authority can still be a decision-making body. Because the record contains competent, credible evidence supporting the trial court's determination that the UDRB review process requires it to make decisions, we affirm this finding of fact.

The trial court next concluded that, as a matter of law, the UDRB is a decision-making body and, as such, is a public body, required to conduct its meetings in public. The Sunshine Law requires that meetings of public bodies be open to the public. A "public body" is defined as "[a]ny board, commission, committee, council, or similar decision-making body of a state agency, institution, or authority, and any legislative authority or board, commission, committee, council, agency, authority, or similar decision-making body of any county, township, municipal corporation, school district, or other political subdivision or local public institution."[3] And R.C. 121.22(A) states that "[t]his section shall be liberally construed."

The city argues that the UDRB advises only the city manager, and that since the UDRB does not advise a public body, the UDRB itself is not a public body. According to the stipulated record, though, the UDRB advises not just the city manager but also the Cincinnati City Council, which clearly is a public body. In *Background on Urban Design Review Board*, the secretary of the UDRB states that "the Board may review other projects as requested by the City Manager or the City Council." The Cincinnati 2000 Plan, adopted by the Cincinnati City Council, provides that "review of projects in the Central Business District are [*sic*] the responsibility of the City Planning Commission, Urban Design Review Board and the Historic Conservation Board, pursuant to their respective enabling ordinances, all acting as advisors to the City Manager and to City Council." In view of this, there is no merit to the city's contention that the UDRB does not advise a public body.

---

2. (1992), 85 Ohio App.3d 410, 412, 620 N.E.2d 85, 86.

3. R.C. 121.22(B)(1)(a).

Therefore, under the definition of a public body, liberally construed, the UDRB is a public body. The UDRB is a decision-making board that reports its decisions to the city manager and the city council. It clearly follows that all meetings of the UDRB must be public meetings open to the public. Thus, the trial court did not err, and we overrule the city's first assignment of error.

## II. Attorney Fees Were Proper

The city's second assignment of error is that the trial court erred by awarding, or not reducing, *The Enquirer's* attorney fees. We overrule this assignment of error and affirm the trial court's award of attorney fees for two reasons.

■ First, we note that the city did not address the issue of an award of or a reduction in attorney fees in the trial court. Because the city did not raise the issues and arguments concerning attorney fees at the appropriate time, it has effectively waived its right to argue those issues on appeal.[4]

■ But even if that were not so, and we were to examine the city's assignment of error on its merits, we would still affirm the trial court's award of attorney fees. The trial court issued an injunction, under R.C. 121.22(I)(1), compelling the city and the UDRB to hold open meetings. R.C. 121.22(I)(2)(a) provides that "[i]f the court of common pleas issues an injunction pursuant to division (I)(1) of this section, the court shall order the public body that it enjoins to pay * * * reasonable attorney's fees." The court is then given the discretion to reduce the attorney fees awarded, if the court determines that the public body reasonably believed that it was not violating R.C. 121.22 and that its conduct served public policy.

The city's argument is that the trial court abused its discretion. Abuse of discretion is more than an error of law or bad judgment—the decision must be unreasonable, arbitrary, or unconscionable.[5] We define "unreasonable" as not being supported by sound reasoning.[6] There is nothing in the record to indicate any lack of reasoning by the trial court. In fact, because the trial court ordered the city and the UDRB to hold open meetings, and ordered the city to pay a civil forfeiture of five hundred dollars, there is nothing surprising, much less unreasonable, arbitrary, or unconscionable, about the trial court also deciding that the city should pay reasonable attorney fees.

---

4. *Le Fort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 123, 512 N.E.2d 640, 643.

5. *Ruwe v. Springfield Twp. Bd. of Trustees* (1987), 29 Ohio St.3d 59, 61, 29 OBR 441, 443, 505 N.E.2d 957, 959.

6. *State v. Echols* (1998), 128 Ohio App.3d 677, 716 N.E.2d 728.

Furthermore, the city failed to present any evidence that it had a reasonable belief that it was in compliance with R.C. 121.22 and that its closed-door meetings served public policy. The city's failure to advance these arguments in the trial court precludes it from doing so now, and it seems unlikely that the city could have mounted a persuasive argument that it believed its closed-door meetings complied with the statute and furthered public policy.

The only argument the city can offer to reverse the award of attorney fees is that the writ of mandamus and the injunction should not have been issued and, therefore, that attorney fees should not have been awarded. But because we are affirming the issuance of the writ and the injunction, we hold that the trial court did not abuse its discretion by awarding or not reducing attorney fees, and overrule the city's second assignment of error.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

DOAN, P.J., and HILDEBRANDT, J., concur.