[Cite as *State ex rel. Mohr v. Colerain Twp.*, 2022-Ohio-1109.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, EX REL. KATHY MOHR, | : | APPEAL NO. C-210369<br>TRIAL NO. A-1902246 |
| and | : | |
| STATE OF OHIO, EX REL. STEPHANIE WRIGHT, | : | *O P I N I O N.* |
| | : | |
| Relators-Appellees, | : | |
| vs. | : | |
| COLERAIN TOWNSHIP, | : | |
| RAJ RAJAGOPAL, | : | |
| DAN UNGER, | : | |
| GREG INSCO, | : | |
| THE COMPREHENSIVE PLAN LAND USE COMMITTEE, | : | |
| | : | |
| MIKE IONNA, | : | |
| GARY HENSON, | : | |
| ROSE SPIECHER, | : | |
| AMANDA BECKHAM, | : | |
| MARK FEHRING, | : | |
| and | : | |
| | : | |
| CRAIG ABERCROMBIE, | : | |
| Respondents-Appellants. | : | |

Civil Appeal From:  Hamilton County Common Pleas Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:    April 1, 2022

*Barron Peck Bennie & Schlemmer, LPA*, and *Matthew Miller-Novak*, for Relators-Appellees,

*Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere* and *Scott A. Sollmann*, for Respondents-Appellants.

Per Curiam.

**{¶1}** Respondents-appellants Colerain Township, the Colerain Township Trustees at the time in question, Raj Rajagopal, Dan Unger, and Greg Insco, as well as the Comprehensive Plan Land Use Committee, and its members, Mike Ionna, Gary Henson, Rose Spiecher, Amanda Beckman, Mark Fehring and Craig Abercrombie, appeal the decision of the Hamilton County Court of Common Pleas finding that they had violated the Open Meetings Act and granting a motion for summary judgment filed by relators-appellees Kathy Mohr and Stephanie Wright. We find no merit in respondents' sole assignment of error, and we affirm the trial court's judgment.

### *Factual Background*

**{¶2}** The record shows that on August 18, 2018, the Colerain Township Trustees ("trustees") formed by a unanimous vote a subcommittee called the Comprehensive Plan Land Use Committee ("the committee") and also established its by-laws. The trustees created the committee to identify appropriate land-use policies and to create an updated land-use plan to be included in Colerain Township's comprehensive land-use plan, the contents of which were to be voted on by the trustees.

**{¶3}** The trustees appointed all the committee's members, which consisted of seven voting members and two nonvoting members. Those members included a trustee, a zoning board of appeals member, and a zoning commission member. The by-laws expressly stated that the committee members served at the trustees' pleasure, and the trustees had the power to change the committee's "function, organization, operation, existence and membership."

**{¶4}** The committee met privately. It did not take the minutes of the meetings, and it did not provide public notice of the meetings. It discussed many

matters, including traffic, septic systems, home values, beautification, signage, neighborhood blight, and tourism. The committee "worked to establish seven different neighborhoods which are distinguishable within Colerain Township and are referred to as 'Character Areas.' " It analyzed each "Character Area" separately. It discussed the pros and cons of each area and then made recommendations for improvements. The committee subsequently made policy recommendations and developed a "Recommended Land Use Map."

{¶5} Jesse Urbancsik, who worked as a planner for Colerain Township, was involved in the process. He attended the committee's meetings and helped "guide the conversation." He testified that the committee's meetings were informal. There was no attendance policy, and it did not take roll call. He also stated that the committee never voted "in regards to anything."

{¶6} In addition to holding meetings, the committee communicated by email. On January 28, 2019, Urbancsik sent an email to all members of the committee. He sent a map from the previous evening's meeting, and told them to "feel free to send your thoughts, comments, or any further discussion * * *." Finally, he noted how "in depth" the committee's conversations had been.

{¶7} On January 30, 2019, Ryan Manring, a committee member, replied and described the "road access" available in Colerain Township. He added, "My point being is that we have an entire host of veins and arteries, but we need our brains (this committee, local government, etc.) to help the heart and body to get the right amount of exercise and diet to host the living organism we call Colerain, to be home."

{¶8} The following day, committee member Speicher responded, "I could not agree more, that's a good metaphor! As you said, the roads and highways make the areas accessible from all directions. * * * Colerain Township is a mature community centrally located with unique assets and offers a wide variety of housing options in safe, stable, residential neighborhoods that have withstood the test of time and still

has potential to grow!" She added that Colerain Avenue is the "main street" of the township. She then discussed some of the problems of perception about the township caused by Colerain Avenue, and some possible improvements.

{¶9} After six months of discussions, the committee worked together to produce a land-use plan for the township. While the planning department staff prepared the draft, the committee members provided critiques and suggestions to the drafts of the plan. They communicated by email, and Urbancsik provided information to all the members.

{¶10} The text of the final draft was written by Jenna LeCount, the then planning director for the township. Urbancsik stated that LeCount was responsible for the text and that he prepared the graphics and provided the photographs. After LeCount left her position, Urbancsik finished working on the draft. The final draft land-use plan contained a number of policy recommendations.

{¶11} Subsequently, relators filed a complaint in which they contended that respondents had violated the Open Meetings Act under former R.C. 121.22 because the committee did not hold public meetings and did not take minutes of the meetings that could be made available to the public. They sought injunctive relief, statutory damages, attorney fees and costs.

{¶12} Upon the creation of the final draft land-use plan, the township trustees were supposed to vote on the plan. They did not do so because after the filing of relators' complaint, the trustees put the plan "on hold." Subsequently, the trustees disbanded the committee.

{¶13} The trial court granted relators' motion for summary judgment in part, finding merit in their claims that the committee violated the Open Meetings Act by failing to keep meeting minutes and hold public meetings. The court also granted respondents' motion in part relating to another claim, which relators have not appealed. Subsequently, the court found that the draft land-use plan produced by the

committee was invalid, issued an injunction requiring that future committees and subcommittees created by respondents maintain proper minutes and make those minutes available to the public, and ordered respondents to pay statutory damages, attorney fees and costs. This appeal followed.

{¶14} In their sole assignment of error, respondents contend that the trial court erred in denying their motion for summary judgment and in granting relators' motion for summary judgment relating to the work of the committee. They argue that the relators failed to present evidence that established that a necessary quorum existed as to the committee, and that the committee did not constitute a public body under former R.C. 121.22. This assignment of error is not well taken.

### *Standard of Review*

{¶15} An appellate court reviews a trial court's ruling on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); C*hateau Estate Homes, LLC v. Fifth Third Bank*, 2017-Ohio-6985, 95 N.E.3d 693, ¶ 10 (1st Dist.). Summary judgment is appropriate if (1) no genuine issue of material fact exists for trial, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977); *Chateau Estate Homes* at ¶ 10.

{¶16} The moving party bears the initial burden of informing the court of the basis for its motion and demonstrating the absence of any genuine issues of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 282-293, 662 N.E.2d 264 (1996); *Maas v. Maas*, 2020-Ohio-5160, 161 N.E.3d 863, ¶ 14 (1st Dist.). Once the moving party has met its burden, the nonmoving party has a reciprocal burden to set forth specific

evidentiary facts showing the existence of a genuine issue for trial. *Dresher* at 293; *Maas* at ¶ 14. The nonmoving party cannot rest on conclusory allegations or self-serving interpretations of the evidence presented. *Dresher* at 293; *Maas* at ¶ 14.

### *The Open Meetings Act*

**{¶17}** The Ohio Open Meetings Act seeks to prevent public bodies from engaging in secret deliberations with no accountability to the public. *State ex rel. Cincinnati Post v. Cincinnati*, 76 Ohio St.3d 540, 544, 668 N.E.2d 903 (1996); *Cincinnati Enquirer v. Cincinnati Bd. of Edn.*, 192 Ohio App.3d 566, 2011-Ohio-703, 949 N.E.2d 1032, ¶ 9 (1st Dist.). Former R.C. 121.22(A) stated that "[t]his section shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law."

**{¶18}** Under former R.C. 121.22(C), "[a]ll meetings of any public body are declared to be public meetings open to the public at all times." To violate the Open Meetings Act, a public body must simultaneously (1) conduct a meeting and (2) deliberate over public business. *Cincinnati Enquirer* at ¶ 11.

### *Public Body*

**{¶19}** We begin with respondents' second argument in which they contend that the committee is not a public body, because if it is not, we need not reach the other arguments. Respondents argue that the committee is not a decision-making body. They also argue that its function was administrative and that its advice was provided to the township's administrative staff, not the trustees.

**{¶20}** R.C. 121.22(B)(1) defines a "public body" as "any legislative authority or board, commission, committee, council, agency, authority, or similar decision-making

body of any * * * township * * *," as well as "a committee or subcommittee" of any of those bodies. The Ohio Supreme Court has defined a "committee" as a "subordinate group to which a deliberative assembly or other organization refers business for consideration, investigation, oversight, or action," or "a body of persons delegated to consider, investigate, or take action upon and usu. [sic] to report concerning some matter or business." *State ex rel. ACLU of Ohio v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 43, quoting *Webster's Third New International Dictionary* 458 (1986) and *Black's Law Dictionary* 309 (9th Ed.2009).

{¶21} Several appellate districts have held that a committee need not be a decision-making body to be a public body. They have also stated that making recommendations and advising other public bodies necessitates making decisions. *See Kanter v. Cleveland Hts.*, 8th Dist. Cuyahoga No. 110524, 2021-Ohio-4318, ¶ 14-26; *State ex rel. Maynard v. Medina Cty. Facilities Taskforce Subcommittee*, 9th Dist. Medina No. 19CA0083-M, 2020-Ohio-5561, ¶ 21; *Wheeling Corp. v. Columbus*, 147 Ohio App.3d 460, 2001-Ohio-8751, 771 N.E.2d 263, ¶ 55-63 (10th Dist.); *Thomas v. White*, 85 Ohio App.3d 410, 411-412, 620 N.E.2d 85 (9th Dist.1992).

{¶22} In *Cincinnati Enquirer v. Cincinnati*, 145 Ohio App.3d 335, 762 N.E.2d 1057 (1st Dist.2001), this court stated that an "Urban Design Review Board," a group of architectural consultants for the city, was a public body. The city argued that the board only advised the city manager, and since it did not advise a public body, the board itself was not a public body. We noted that the board also reported to city council, which is a public body. *Id.* at 338. We affirmed the trial court's decision, which stated that the board had to make many decisions to determine whether to recommend approval of a project and in formulating its advice. Whether the board had "ultimate authority to decide matters is not controlling * * *. *Id.*

{¶23} Construing the Open Meetings Act liberally, we hold that the trial court was correct in finding that the committee meets the definition of a public body. The committee is a subordinate group to which the trustees referred business for consideration. The members were appointed to make recommendations for the comprehensive land-use plan that the trustees had the power to approve. Thus, the committee made decisions. That the committee had no formal decision-making power is not dispositive. Further, respondents' claim that the committee did not make recommendations is not accurate. It made recommendations about the township's land-use policy in general and for the various neighborhoods in Colerain Township. The draft land-use plan itself discusses the committee's work and demonstrates that it made recommendations.

{¶24} The fact that the committee did not take attendance or have formal votes does not mean that it did not make decisions. Urbancsik indicated that the committee members reached agreements about their recommendations. Further, even if the trustees had later voted to ratify the final draft of the comprehensive land-use plan with little discussion, it would not have changed the fact that the consensus was reached by the committee in private. *See Piekutowski v. S. Cent. Ohio Edn. Serv. Ctr. Governing Bd.*, 161 Ohio App.3d 372, 2005-Ohio-2868, 830 N.E.2d 423, ¶ 14-19 (4th Dist.). The sole reason the trustees did not vote on the plan was that the plan was put "on hold" and that the committee was disbanded due to this lawsuit.

{¶25} "A basic tenant of the Open Meetings Act is the requirement that a public body take official or formal action in a public meeting * * *." *Keystone Commt. v. Switzerland of Ohio Local School Dist. Bd. of Edn.*, 2016-Ohio-4663, 67 N.E.3d 1, ¶ 38 (7th Dist.). "An official or formal action taken in an open session is invalid if it results from discussions that improperly occurred outside of an open meeting." *Id.* The act requires that not only the final vote be public, but also that the entire process

9

be transparent to the public. *Id.* at ¶ 39. "This process ensures that a public body remains fully accountable to the public which it serves." *Id.*

### *Evidentiary Issues*

**{¶26}** Respondents argue that relators failed to present admissible evidence to prove that the committee held a meeting with a majority of its members and that those members deliberated over public business. Therefore, the trial court should not have considered that evidence in ruling on the motions for summary judgment.

**{¶27}** While we review decisions on the merits of summary-judgment motions de novo, we review evidentiary rulings for an abuse of discretion. *Young v. Kaufman*, 8th Dist. Cuyahoga No. 108719, 2020-Ohio-3283, ¶ 51; *Brown v. Mabe*, 170 Ohio App.3d 13, 2007-Ohio-90, 865 N.E.2d 934, ¶ 7 (1st Dist.). When ruling on a motion for summary judgment, the trial court may only review evidence properly authenticated under Civ.R. 56(C). *Deutsche Bank Natl. Trust Co. v. Boswell*, 192 Ohio App.3d 374, 2011-Ohio-673, 949 N.E.2d 96, ¶ 26 (1st Dist.); *Walker v. Hodge*, 1st Dist. Hamilton No. C-080002, 2008-Ohio-6828, ¶ 10-11. That rule provides that a court ruling on a motion for summary judgment may consider "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact."

**{¶28}** Civ.R. 56(E) provides the proper procedure for introducing evidentiary matters not specifically authorized by Civ.R. 56(C). It permits other types of evidence to be used to support or oppose a motion for summary judgment if it is properly authenticated and referred to in a properly framed affidavit. *Deutsch Bank* at ¶ 27; *Walker* at ¶ 12. Unauthenticated materials are inadmissible. *Bank of New York v. Grome*, 1st Dist. Hamilton No. C-100059, 2010-Ohio-4595, ¶ 13.

{¶29} First respondents argue that relators primarily cite an unauthenticated draft of the land-use plan, captioned photographs contained in that draft, and emails between the committee members. "The requirement of identification or authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). The burden is not great, and only requires a prima facie showing through direct or circumstantial evidence. The proponent can meet this burden by demonstrating a reasonable likelihood that the evidence is authentic. *State v. Brown*, 1st Dist. Hamilton No. C-120327, 2013-Ohio-2720, ¶ 16; *State v. Wright*, 1st Dist. Hamilton No. C-080437, 2009-Ohio-5474, ¶ 47.

{¶30} Urbancsik's testimony was sufficient to authenticate the documents because he had personal knowledge that the draft land-use plan was what the relators claimed it to be. Urbancsik identified the plan. While the former planning director wrote the text, Urbancsik did all of the graphic design and took all of the photographs. He attended the committee meetings and helped "guide the conversation" that led to the recommendations in the plan. The fact that he did not write the text did not prevent him from authenticating the document. Further, the emails were adequately authenticated as Urbancsik identified them as emails he had written.

{¶31} The trial court's finding that the documents were adequately authenticated was not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. Consequently, the trial court did not err in considering the plan, the photographs in the plan, and the emails in deciding the motions for summary judgment. *See State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 13; *William Powell Co. v. OneBeacon Ins. Co.*, 1st Dist. Hamilton Nos. C-190199 and C-190212, 2020-Ohio-3270, ¶ 50.

{¶32} Respondents also contend that the disputed documents were hearsay. Relators contend that they were not hearsay because they were admissions by a party

opponent. We agree. Evid.R. 801(D)(2) provides that a statement made by a party's agent or servant concerning a matter within the scope of his or her agency or employment during the existence of the relationship is not hearsay. *Cordle v. Bravo Dev., Inc.*, 10th Dist. Franklin No. 06AP-256, 2006-Ohio-5693, ¶ 16; *Semco, Inc. v. Sims Bros., Inc.*, 3d Dist. Marion No. 9-12-62, 2013-Ohio-4109, ¶ 26; *Johnson v. United Dairy Farmers*, 1st Dist. Hamilton No. C-940240, 1995 Ohio App. LEXIS 805, *8-9 (Mar. 8, 1995). The contested documents fall squarely within the rule and the trial court did not abuse its discretion in determining the statements were not hearsay.

### *Quorum*

**{¶33}** Under the guise of hearsay and admissibility, respondents challenge the merits of the trial court's determination that they violated the Open Meetings Act. Respondents contend that relators failed to prove that a quorum of the committee members existed to establish that a meeting occurred within the meaning of former R.C. 121.22(B)(2). A quorum is the number of committee members necessary "to transact business in the absence of other members." *Monfort Supply Co. v. Hamilton Cty. Bd. of Zoning Appeals*, 1st Dist. Hamilton No. C-080048, 2008-Ohio-6829, ¶ 13.

**{¶34}** As previously discussed, to violate the Open Meetings Act, a public body must simultaneously (1) conduct a meeting and (2) deliberate over public business. *Cincinnati Enquirer*, 192 Ohio App.3d 566, 2011-Ohio-703, 949 N.E.2d 1032, at ¶ 11. The party alleging a violation of the Open Meetings Act must establish that the public body held a meeting with a majority of its members and that the meeting improperly excluded the public. *State ex rel. Hicks v. Clermont Cty. Bd. of Commrs.*, 2021-Ohio-998, 171 N.E.3d 358, ¶ 27 (12th Dist.); *Keystone Commt*, 2016-Ohio-4663, 67 N.E.3d 1, at ¶ 26.

{¶35} A meeting is "any prearranged discussion of the public business of the public body by a majority of its members." Former R.C. 121.22(B)(2). This court has stated that a public body deliberates "by thoroughly discussing all of the factors involved [in a decision], carefully weighing the positive factors against the negative factors, cautiously considering the ramifications of its proposed action, and gradually arriving at a proper decision which reflects the legislative process." *Cincinnati Enquirer* at ¶ 12, quoting *Theile v. Harris*, 1st Dist. Hamilton No. C-860103, 1986 Ohio App. LEXIS 7096 (June 11, 1986). Deliberations involve "more than information-gathering, investigation or fact-finding, which are essential functions of any board." *Cincinnati Enquirer* at ¶ 12.

{¶36} The Ohio Supreme Court has held that the Open Meetings Act applies to supposedly "informal" meetings where public policy is discussed. *State ex rel. Cincinnati Post*, 76 Ohio St.3d at 543, 668 N.E.2d 903. Nevertheless, it does not prohibit "impromptu hallway meetings between council members" or "member to member prearranged discussions." It "concerns itself only with situations where a majority meets." *Id.* at 544.

{¶37} Respondents argue that the relators only cite to a single photograph contained in the committee's draft as evidence that the proper quorum of a majority of the committee's members had met. In the photo, which is captioned, "The Land Use Committee discussing ideas at one of the meetings (2019)," seven people are visible. The committee's by-laws stated that the committee "shall consist of seven voting members and two non-voting members."

{¶38} Moreover, the photograph was not the only evidence of a quorum. Urbancsik provided testimony as to how the committee members interacted, including discussing issues, giving opinions, and making suggestions. The committee conducted an analysis concerning the strengths, weaknesses, opportunities and threats to a

13

specific neighborhood. Urbancsik indicated that those discussions occurred during a "natural conversation." When asked if he was able to get a consensus of how the committee felt about a particular issue, he replied affirmatively. Additionally, the draft land-use plan discussed the nature of the committee members' interactions, which resulted "in generally agreed upon recommendations and land use map recommendations." This evidence is sufficient to show that meetings occurred with a majority of the committee's members.

{¶39} The trial court found that the committee also deliberated through email. In *White v. King*, 147 Ohio St.3d 74, 2016-Ohio-2770, 60 N.E.3d 1234, the Ohio Supreme Court noted that "[n]othing in the plain language of R.C. 121.22(B)(2) expressly mandates that a 'meeting' occur face to face. To the contrary, it provides that *any* prearranged discussion can qualify as a meeting." (Emphasis in original.) *Id*. at ¶ 15. The court further stated that "[t]he distinction between serial in-person communications and serial electronic communications via e-mail for purposes of R.C. 121.22 is a distinction without a difference because discussions of public bodies are to be conducted in a public forum * * *." *Id*. at ¶ 18. Noting that the statute provides that the Open Meetings Act should be construed liberally, it concluded, "Allowing public bodies to avoid the requirements of the Open Meetings Act by discussing public business via serial electronic communications subverts the purpose of the act." *Id*.

{¶40} The emails identified by Urbancsik in his deposition were addressed to the entire committee. In the emails, the committee discussed various issues such as the visual appeal of neighborhoods, strategies to improve that appeal, and specific businesses as targets for improvement, such as the pawn shops on Colerain Avenue. Thus, the emails constituted a meeting within the meaning of R.C. 121.22(B)(2).

{¶41} The record does not show that respondents intentionally violated the Open Meetings Act. This case does not involve a deliberate intent to circumvent the

requirements of the Act as occurred in *Cincinnati Post* where a city council purposely used a series of meetings where a majority was not present to circumvent the law's requirements. Nevertheless, "[t]he statute that exists to shed light on the deliberations of public bodies cannot be interpreted in a manner which would result in the public being left in the dark." *Cincinnati Post*, 76 Ohio St.3d at 544, 668 N.E.2d 903.

**{¶42}** The trial court repeatedly referenced the spirit of the law and the requirement that it be liberally construed in its decision. We agree with its reasoning. As one court has stated,

> Taking public, formal action as contemplated by R.C. 121.22, et seq., involves more than merely tallying final votes on the issue. It involves all of the discussions and deliberations on that issue be held in open, public meetings that lead to the final vote. The deliberative process leading up to the action must be transparent to the public. This process ensures that a public body remains fully accountable to the public which it serves.

*Keystone Commt.*, 2016-Ohio-4663, 67 N.E.3d 1, at ¶ 39.

**{¶43}** In sum, we hold that the trial court did not err in finding that the committee's deliberations in private and failure to keep minutes of the meetings violated the Open Meetings Act. Consequently, the trial court did not err in granting relators' motion for summary judgment on that issue. We overrule respondents' assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**BERGERON, P.J., WINKLER** and **BOCK, JJ.**

Please note:

> The court has recorded its own entry on the date of the release of this opinion.