**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Zimmerman v. Avon Lake*, Slip Opinion No. 2026-Ohio-1090.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1090

THE STATE EX REL. ZIMMERMAN ET AL. *v.* THE CITY OF AVON LAKE ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Zimmerman v. Avon Lake*, Slip Opinion No. 2026-Ohio-1090.]**

*Mandamus—Open meetings—R.C. 121.22(C)—Public-records requests—R.C. 149.43—Writ sought to order preparation of minutes for previously held meetings of a committee of a community-improvement corporation and production of those minutes in response to a public-records request—Writ granted ordering preparation and production of the requested minutes for previously held committee meetings at which a majority of its members discussed public business—Relator awarded court costs, and relator's requests for attorney fees and statutory damages denied.*

(No. 2024-1711—Submitted November 18, 2025—Decided March 31, 2026.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER,

DeWine, Brunner, Deters, Hawkins, and Shanahan, JJ.

**Per Curiam.**

{¶ 1} Relators, William Zimmerman; Ohio Citizens for Honesty, Integrity, and Openness in Government, Ltd. ("Ohio Citizens"); Taxpayers Coalition; and Protect Our Lake and Environment, L.L.C. ("POLE"), bring this mandamus action against 14 respondents. Respondents are the City of Avon Lake ("the city"), the Avon Lake Community Improvement Corporation ("Avon Lake CIC"), the Brownfield Funding Committee ("Brownfield committee"), and 11 individual persons. Relators ask for a writ of mandamus ordering respondents to prepare the minutes for previously held Brownfield committee meetings and produce those minutes in response to a public-records request. Relators also ask for awards of court costs, attorney fees, and statutory damages.

{¶ 2} For the following reasons, we grant a writ of mandamus ordering respondents to prepare and produce the requested minutes for previously held Brownfield committee meetings at which a majority of its members discussed public business. We award relators court costs but deny their requests for awards of attorney fees and statutory damages. We deny relators' "motion for costs of the proceedings" and "motion for rebuttal evidence and/or motion to strike." We deny respondents' motion for a protective order as moot.

## I. FACTS AND PROCEDURAL HISTORY

### A. Background

{¶ 3} The city is a charter municipality in the State of Ohio, and Avon Lake CIC is the city's agency and instrumentality for economic-development activities under R.C. 1724.10. The Brownfield committee was created by Avon Lake CIC to collect and evaluate information related to redevelopment projects. The following named respondents are current or past members of the Avon Lake CIC board of directors and currently hold or formerly held certain positions of that body: Janice

Lapina, former president; Steve Luca, former president and former vice president; Ross Vincent, former vice president; Ted Esborn, secretary and treasurer; Ron Kovach, former vice president; Greg Zilka, former board member; Zach Arnold, former board member; and Mark Spaetzel, board member. Some of these named respondents also currently hold or formerly held certain positions with the city. For example, Esborn is the city's community-development director. As the secretary for Avon Lake CIC, Esborn is required to attend meetings of the Avon Lake CIC board of directors, keep meeting minutes, and provide copies of those minutes to the city's mayor and the clerk of the Avon Lake City Council once the board approves the minutes. Zilka is a former mayor of the city, and Arnold is a former Avon Lake City Council member. Named respondents Luca, Dan Bucci, Andrew Perry, and Jeff Brausch were members of the Brownfield committee, and Luca held the position of chairman.

{¶ 4} Zimmerman is a resident of the city. Ohio Citizens, Taxpayers Coalition, and POLE are nonprofit companies. Ohio Citizens claims that its purposes include promoting openness and transparency in government. Taxpayers Coalition asserts that its purposes include monitoring various aspects of government activity. POLE claims that its purposes include addressing environmental issues primarily in the city.

{¶ 5} On October 29, 2024, Ohio Citizens submitted a public-records request to the city, requesting records related to the Brownfield committee, including its meeting minutes. On November 15, the city responded by informing Ohio Citizens that it did not have minutes for previously held Brownfield committee meetings. On December 3, relators sent a "taxpayers' demand," citing R.C. 733.56 through 733.59, to the city's law director, demanding that the law director bring an appropriate legal action to compel the production of the requested minutes. On December 6, the law director responded to relators' demand, claiming that no minutes for Brownfield committee meetings existed apart from the minutes

of Avon Lake CIC meetings and indicating that there was no basis to bring a mandamus action to compel the production of records that did not exist.

### B. Procedural history

{¶ 6} On December 12, 2024, relators initiated this mandamus action under Ohio's Sunshine Law, R.C. 121.22, and Public Records Act, R.C. 149.43. Relators' mandamus claim is limited to the requested minutes for previously held Brownfield committee meetings.[1] Specifically, in their complaint, relators demand a writ ordering respondents to prepare and produce the requested minutes. They also ask for awards of court costs, attorney fees, and statutory damages. On the same day, relators also filed a "motion for costs of the proceedings," requesting that we set the costs of the proceedings at $100.

{¶ 7} Respondents filed a motion to dismiss. We granted the motion in part with respect to named respondent Todd Davis, thus dismissing him as a party, but we denied the motion with respect to the remaining 14 respondents. 2025-Ohio-1876. We issued an alternative writ, ordered the remaining respondents to file an answer, and set a schedule for the submission of evidence and briefs. *Id.*

{¶ 8} After filing their answer, respondents filed a motion for a protective order under Civ.R. 26(C) to prevent relators from conducting discovery. Relators timely filed their response to that motion, and the parties submitted evidence on June 17, 2025.

{¶ 9} The parties filed briefs, and relators filed a reply brief. Relators also timely filed a "motion for rebuttal evidence and/or motion to strike." Respondents timely responded to that motion.

---

1. Although relators also requested relief as a taxpayers' action "per law both common and statutory," no further explanation is provided for this requested relief. And relators do not set forth an argument in support of this claim in their merit brief. *See State ex rel. Howard v. Watson*, 2023-Ohio-3399, ¶ 16 ("the court need not address request for writ of mandamus that was raised in complaint but was not specifically argued in merit brief"), citing *State ex rel. Ohio Gen. Assembly v. Brunner*, 2007-Ohio-3780, ¶ 26, fn. 4. Thus, relators forfeited their claim for relief as a taxpayers' action.

### C. Submitted evidence

{¶ 10} Relators' evidence consists of 26 exhibits and the affidavits of Zimmerman and Gerald Phillips, the attorney representing relators. The exhibits include the city ordinances designating Avon Lake CIC as an agency and instrumentality of the city, the Avon Lake CIC Code of Regulations, Avon Lake CIC meeting minutes, Ohio Citizens' public-records request and relators' taxpayers' demand, and documentation detailing redevelopment projects that Avon Lake CIC and the Brownfield committee either worked on or have some alleged connection to.

{¶ 11} Respondents' evidence consists of the affidavit of Esborn, a partial copy of the city's charter, Avon Lake CIC meeting minutes, the Avon Lake CIC Code of Regulations, and past correspondence with relators.

{¶ 12} In his affidavit, Esborn, the secretary-treasurer of Avon Lake CIC, avers that the Brownfield committee was "a purely advisory committee" that served "as a liaison between [Avon Lake CIC], the City, and members of the public." He avers that Avon Lake CIC never delegated decision-making authority to the Brownfield committee and that there were no Brownfield committee meetings at which it "took or agreed to take or recommend any actions on behalf of [Avon Lake CIC]." Esborn further avers that he was the person who searched for the requested minutes for previously held Brownfield committee meetings and that the city's response to the request stated that the city had no such minutes. However, Esborn does not attest that no minutes for Brownfield committee meetings exist. Esborn avers that after relators filed this mandamus action, the Brownfield committee "functionally, if not formally, disbanded." Esborn does not explain what he means by "functionally, if not formally, disbanded," and other than this assertion, respondents provide no evidence that the Brownfield committee has disbanded. Esborn also makes several assertions that Phillips lacks personal knowledge of the facts and evidence of this case.

## II. ANALYSIS

### *A. Motions*

{¶ 13} While this action was pending, relators filed two motions and respondents filed one motion. For the following reasons, we deny each motion.

### 1. Relators' "motion for costs of the proceedings"

{¶ 14} Relators filed a "motion for costs of the proceedings," requesting that the court set the costs of the proceedings at $100 in accordance with the Rules of Practice of the Supreme Court of Ohio. The filing fee for an original action is $100, S.Ct.Prac.R. 3.04, and relators paid the filing fee. Additionally, S.Ct.Prac.R. 18.05(A)(2) states that costs will be assessed at the conclusion of an original action brought in this court. Because relators offer no explanation beyond seemingly asking that we comply with the Rules of Practice of the Supreme Court of Ohio, we deny the motion.

### 2. Respondents' motion for a protective order

{¶ 15} In their motion for a protective order, respondents sought to prevent relators from conducting depositions during the evidence-submission period. However, respondents did not request expedited review of their motion, and relators timely filed their response to the motion the day before the June 17, 2025 evidentiary deadline, *see* 2025-Ohio-1876. Because the evidentiary deadline closed discovery, a protective order is moot. Therefore, we deny respondents' motion for a protective order as moot.

### 3. Relators' "motion for rebuttal evidence and/or motion to strike"

{¶ 16} Relators filed a "motion for rebuttal evidence and/or motion to strike," seeking to rebut certain averments made by Esborn in his affidavit. To do this, relators request leave to submit another affidavit by Phillips to rebut Esborn's averments attesting that Phillips lacks personal knowledge of the facts and evidence of this case.

{¶ 17} In his rebuttal affidavit, Phillips attests that he has personal knowledge of the exhibits that relators submitted as evidence, that those exhibits are true and accurate, and that he has personal knowledge of the facts of this case. Phillips also attests to what he believes certain exhibits prove. Respondents oppose relators' motion, arguing that relators' complaint contains a "false" claim about the Brownfield committee's decision-making authority and that Phillips's rebuttal affidavit lacks a factual basis for his claimed personal knowledge of that "false" claim.

{¶ 18} S.Ct.Prac.R. 12.06(B) provides that a "[r]elator may file a motion for leave to file rebuttal evidence within the time permitted for the filing of relator's reply brief" and that the "rebuttal evidence shall be attached to the motion for leave." "'Rebutting evidence is [evidence] given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence.'" (Bracketed text in original.) *State ex rel. Mobley v. Powers*, 2024-Ohio-104, ¶ 11, quoting *State v. McNeill*, 1998-Ohio-293, ¶ 44. We have discretion in determining whether to admit rebuttal evidence. *Id*.

{¶ 19} Phillips's rebuttal affidavit attests to his personal knowledge of the facts and evidence of this case that he largely already attested to in his prior affidavit that relators submitted as evidence. Accordingly, we deny the motion.

### B. *Mandamus relief*

{¶ 20} The mandamus relief that relators seek here relates to the Open Meetings Act's requirements concerning preparation of a public body's meeting minutes. Specifically, relators seek to enforce R.C. 121.22(C), which "requires a public body to prepare, file, and maintain minutes of its meetings," *State ex rel. Ames v. Portage Cty. Bd. of Commrs*., 2021-Ohio-2374, ¶ 21. A "meeting" is defined as "any prearranged discussion of the public business of the public body by a majority of its members." R.C. 121.22(B)(2). "Once these minutes are prepared,

Ohio's Public Records Act, R.C. 149.43, requires the public body to permit public access to the minutes upon request." *State ex rel. Long v. Cardington Village Council*, 2001-Ohio-130, ¶ 13. "Mandamus is an appropriate remedy to compel a public body to prepare and produce full and accurate meeting minutes under R.C. 121.22 and 149.43." *Ames* at ¶ 24. Therefore, relators argue that they are entitled to a writ ordering respondents to prepare the minutes for previously held Brownfield committee meetings under R.C. 121.22(C) and produce those minutes under R.C. 149.43.

{¶ 21} For relators to prevail on their mandamus claim under the Open Meetings Act, they "must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of [respondents] to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law." *Id.* at ¶ 12. For relators to prevail on their mandamus claim under the Public Records Act that is based on the public-records request made by Ohio Citizens, "the first two elements are the same, but [they] need not establish the lack of an adequate remedy in the ordinary course of the law." *Id.*

### C. *Respondents mischaracterize relators' requested relief*

{¶ 22} We must first address respondents' argument that relators' requested relief seeks a declaratory judgment and prohibitory injunction, not mandamus relief. They argue that what relators truly request is for this court to declare that the Brownfield committee is subject to open-meeting and minute-keeping requirements and then enjoin it to generally comply with R.C. 121.22(C) in the future. Respondents mischaracterize the requested relief.

{¶ 23} A proper mandamus action seeks to compel a public entity to perform a clear legal duty. *See State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 2008-Ohio-1593, ¶ 9. "What distinguishes a proper mandamus complaint from an improper one is not whether the relator is seeking declaratory judgment as part of the complaint but whether the complaint seeks to prevent or compel official action."

8

*State ex rel. Ethics First—You Decide Ohio Political Action Commt. v. DeWine*, 2016-Ohio-3144, ¶ 10. "The difference between the two forms of relief is simple: 'a prohibitory injunction is used to prevent a future injury, but a mandatory injunction is used to remedy past injuries.'" *State ex rel. Gadell-Newton v. Husted*, 2018-Ohio-1854, ¶ 10, quoting *Gen. Motors Corp.* at ¶ 12.

{¶ 24} Here, relators request a writ ordering respondents to prepare the minutes for previously held Brownfield committee meetings and comply with a public-records request for those minutes. Mandamus is an appropriate remedy to compel a public body to prepare and produce full and accurate meeting minutes. *Ames*, 2021-Ohio-2374, at ¶ 24. And we have previously "granted writs of mandamus directing a public body to 'prepare, file, and maintain full and accurate minutes and to conduct all meetings in public, except for properly called executive sessions.'" *Id*. at ¶ 18, quoting *Long*, 2001-Ohio-130, at ¶ 34. Because relators seek to compel action by the respondents, not prevent respondents from acting, they may seek mandamus relief. Therefore, we reject respondents' argument that relators' requested relief seeks a declaratory judgment and prohibitory injunction.

### D. Whether the Brownfield committee is subject to R.C. 121.22(C)'s requirements

{¶ 25} Relators argue that Avon Lake CIC is required to hold open meetings and keep minutes of those meetings under R.C. 121.22(C) and that the Brownfield committee has the same requirements because it is a committee of Avon Lake CIC. Respondents disagree.

#### 1. R.C. 149.43 and 121.22(C) apply to the Avon Lake CIC

{¶ 26} The city has adopted R.C. 149.43 as its public-records policy, *see* Avon Lake Code of Ord. 274.06, and Avon Lake CIC has adopted the city's public-records policy. Respondents invoke the Home Rule provisions of the Ohio Constitution as the basis for their argument that R.C. 121.22(C) does not apply to the city, Avon Lake CIC, or the Brownfield committee.

{¶ 27} Under the Home Rule provisions in Article XVIII, Sections 3 and 7 of the Ohio Constitution, a charter municipality may enact a charter and ordinances in matters of local self-government that are different from statutory provisions, and a charter controls when it conflicts with general statutory provisions, *State ex rel. Lightfield v. Indian Hill*, 69 Ohio St.3d 441, 442 (1994) ("In matters of local self-government, if a portion of a municipal charter expressly conflicts with a parallel state law, the charter provisions will prevail."). Charter municipalities may set open-meeting requirements as a matter of local self-government. *See Fox v. Lakewood*, 39 Ohio St.3d 19, 22 (1988).

{¶ 28} A charter municipality must clearly and expressly state the areas in which it intends to depart from statutory provisions. *Lightfield* at 443. When a municipality's charter is not inconsistent with R.C. 121.22, the statute applies to the charter municipality. *See State ex rel. Cincinnati Post v. Cincinnati*, 1996-Ohio-372, ¶ 27 (holding that R.C. 121.22 applied to a charter municipality because the charter was "certainly not inconsistent with the Sunshine Law"). Therefore, whether relators are entitled to mandamus relief depends on whether the city implements its own specific open-meeting and minute-keeping requirements that depart from the requirements set forth in R.C. 121.22(C).

{¶ 29} Respondents identify no charter provision or city ordinance that explicitly supersedes R.C. 121.22(C)'s requirements. And the city's charter provides that "[a]ll general laws of the State of Ohio as now or hereafter enacted which are not in conflict with this Charter, as now enacted or hereafter amended, or with any ordinance enacted hereunder shall apply to" the city. Avon Lake Charter Ch. 13, § 66. Because the city does not implement its own specific open-meeting and minute-keeping requirements that depart from the requirements set forth in R.C. 121.22(C), the statute applies to Avon Lake CIC. *See Cincinnati Post* at ¶ 27.

**2. Avon Lake CIC is a public body subject to R.C. 121.22(C)'s requirements**

{¶ 30} For purposes of R.C. 121.22, the definition of "public body" includes "any legislative authority or board, commission, committee, council, *agency*, authority, or similar decision-making body of any . . . municipal corporation . . . or other political subdivision or local public institution." (Emphasis added.)  R.C. 121.22(B)(1)(a).  R.C. 1724.10(A)(1) provides that a community-improvement corporation created under R.C. Ch. 1724 may be designated "as the *agency* of each [participating] political subdivision for the industrial, commercial, distribution, and research development in such political subdivision" when the legislative authority of the political subdivision has determined that doing so promotes "the health, safety, morals, and general welfare of its inhabitants through the designation of a community improvement corporation as such agency." (Emphasis added.); *see also State ex rel. Burton v. Greater Portsmouth Growth Corp.*, 7 Ohio St.2d 34, 40 (1966) (R.C. 1724.10 "in general provides that a county or municipality may designate a community improvement corporation as its agent for the industrial, commercial and research development of the area").

{¶ 31} As respondents acknowledge in their merit brief, once Avon Lake CIC was organized in the manner provided in R.C. Ch. 1724, it became "the agency and instrumentality of the city for economic development generally, and lakefront redevelopment specifically within the city," Avon Lake Code of Ord. 250.01. Because Avon Lake CIC is designated as an "agency" of the city, we conclude that Avon Lake CIC is a public body that is subject to the requirements of R.C. 121.22(C).

{¶ 32} Regarding whether a community-improvement corporation's records are subject to disclosure under the Public Records Act, R.C. 149.43(A)(1) defines public records as "records kept by any public office, including, but not limited to, state, county, city, village, township, and school district units."  R.C. 1724.11 does not explicitly subject a community-improvement corporation that is

designated as an agency under R.C. 1724.10 to the Public Records Act, but R.C. 1724.11 states that specific information maintained by the corporation—such as certain location and improvement information submitted by an entity to the corporation—is not a public record subject to R.C. 149.43, *see* R.C. 1724.11(A). And R.C. 1724.11(B)(1) provides that when the board of directors of a community-improvement corporation or any of the board's committees or subcommittees meet to consider information that is not a public record under R.C. 1724.11(A)(1), the board, committee, or subcommittee, "by majority vote of all members present, may close the meeting during consideration of the confidential information." R.C. 1724.11(B)(1) continues that the board or any of its committees or subcommittees "shall consider no other information during the closed session." The General Assembly's excluding certain records from disclosure under the Public Records Act shows that other records are subject to disclosure.

{¶ 33} Accordingly, because Avon Lake CIC was designated as an agency of the city under R.C. 1724.10(A)(1) and Avon Lake Code of Ord. 250.01, and no charter provision or city ordinance explicitly supersedes R.C. 121.22(C) with respect to Avon Lake CIC, we conclude that Avon Lake CIC is a public body that must comply with R.C. 121.22(C)'s requirements. *See Cincinnati Post*, 1996-Ohio-372, at ¶ 27. Therefore, some records in Avon Lake CIC's possession may be subject to disclosure under the Public Records Act.

### 3. The Brownfield committee also must follow R.C. 121.22(C)'s requirements

{¶ 34} Having determined that Avon Lake CIC must comply with R.C. 121.22(C)'s requirements, we must now determine whether the Brownfield committee, as an entity created by Avon Lake CIC, has the same requirements. For the following reasons, we conclude that the Brownfield committee is also subject to R.C. 121.22(C)'s requirements.

*a. The Brownfield committee is a committee of Avon Lake CIC*

**{¶ 35}** As set forth above, Avon Lake CIC is a public body under R.C. 121.22(B)(1)(a). Under R.C. 121.22(B)(1)(b), "[a]ny committee or subcommittee of a body described in [R.C. 121.22(B)(1)(a)]" is also a public body.

**{¶ 36}** Under Avon Lake CIC's Code of Regulations, Avon Lake CIC, through its board of directors, may establish special or standing committees that consist of members that are appointed by the board and those committees may exercise the power and authority delegated to them by the board. Further, all committee actions must be reported to the board at the next board meeting following such actions, and the board may revise or alter the committee's actions as it sees fit. Avon Lake CIC created the Brownfield committee to collect and evaluate information related to redevelopment projects, and the evidence shows that Brownfield committee members attended Avon Lake CIC meetings to provide updates and recommendations on those projects.

**{¶ 37}** Relators argue that the Brownfield committee is subject to R.C. 121.22(C)'s requirements because it is a committee of Avon Lake CIC, irrespective of its making recommendations to Avon Lake CIC that require the approval of Avon Lake CIC. Respondents disagree, arguing in their merit brief that the Brownfield committee is an "advisory group without delegated authority to act" on behalf of Avon Lake CIC and that because it lacks decision-making authority, the Brownfield committee is not a public body that is subject to R.C. 121.22(C). For support, respondents cite *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 2011-Ohio-625 ("*ACLU*").

**{¶ 38}** In *ACLU*, we considered what makes an entity a "committee" of a "public body" for purposes of R.C. 121.22. In so doing, we concluded that "[a] 'committee' is a 'subordinate group to which a deliberative assembly or other organization refers business for consideration, investigation, oversight, or action,' [*Black's Law Dictionary* (9th Ed. 2009)], or 'a body of persons delegated to

consider, investigate, or take action upon and usu[ally] to report concerning some matter or business,' [*Webster's Third New International Dictionary* (1986)]." *ACLU* at ¶ 43. When we evaluated whether each entity in question was a committee of a public body or was a "workgroup" of private citizens not subject to R.C. 121.22(C)'s requirements, we considered each entity's creation and oversight and whether it was delegated charter-mandated duties. *See id.* at ¶ 44. Because the public body did not create, direct, or delegate authority to the entities in question, we concluded that each entity was not a committee of a public body. *See id.*

{¶ 39} Here, the evidence shows that (1) the Brownfield committee was created by Avon Lake CIC as an advisory committee and (2) Brownfield members advised Avon Lake CIC on redevelopment projects. But the evidence does not show that Avon Lake CIC delegated decision-making authority to the Brownfield committee, and respondents argue that the Brownfield committee must be a decision-making body to trigger R.C. 121.22(C)'s requirements. The lack of delegated authority by a public body is one factor that we previously considered when evaluating whether a particular entity was a committee of a public body, but it is not the only relevant factor. *See id.* And unlike in *ACLU*, in which a public body did not create the entities in question, *see id.*, the evidence here shows that the Brownfield committee was created by Avon Lake CIC, a public body.

{¶ 40} Moreover, R.C. 121.22(B)(1)(b) does not require that a committee be a formal decision-making body. Indeed, appellate courts have held that an advisory committee may be a public body for purposes of R.C. 121.22. *See, e.g.*, *State ex rel. Mohr v. Colerain Twp.*, 2022-Ohio-1109, ¶ 23 (1st Dist.); *Kanter v. Cleveland Hts.*, 2021-Ohio-4318, ¶ 20-23, 26 (8th Dist.); *Thomas v. White*, 85 Ohio App.3d 410, 412 (9th Dist. 1992). Accordingly, we conclude that the Brownfield committee is a committee of Avon Lake CIC under R.C. 121.22(B)(1)(b) and is therefore a public body.

*b. The Brownfield committee is subject to R.C. 121.22(C)'s requirements*

{¶ 41} Respondents argue that even if the Brownfield committee is considered a committee of Avon Lake CIC under R.C. 121.22(B)(1)(b), the Brownfield committee is still not required to keep meeting minutes under a charter provision or city ordinance. Respondents do not cite a charter provision or city ordinance stating that the Brownfield committee is exempt from R.C. 121.22(C)'s requirements; instead, they argue that the city places different meeting requirements on its various boards, commissions, agencies, and committees and that the lack of an express requirement in a charter provision or city ordinance for a specific entity to conduct open meetings or keep meeting minutes shows that no such requirement is placed on the entity. Their argument is not persuasive.

{¶ 42} Under a Home Rule analysis, express language in a municipal charter must demonstrate a conflict with a statute to supersede the statute. *See State ex rel. N. Olmsted v. Cuyahoga Cty. Bd. of Elections*, 2001-Ohio-1626, ¶ 17; *see also State ex rel. Meyers v. Columbus*, 71 Ohio St.3d 603, 606 (1995) ("In order for the municipal charter to supersede state law regarding police promotions, the conflict must be by express charter language rather than mere inference."). Because respondents point to no charter provision or city ordinance that conflicts with the requirements of R.C. 121.22(C), the statute applies to the Brownfield committee.

### E. Relators are entitled to a writ of mandamus

{¶ 43} Respondents argue that relators are not entitled to a writ of mandamus ordering the production of minutes for previously held Brownfield committee meetings, because no minutes exist. Generally, a public body has no duty to produce records that do not exist. *E.g.*, *State ex rel. Adkins v. Dept. of Rehab. & Corr. Legal Dept.*, 2024-Ohio-5154, ¶ 17. However, we have previously issued a writ of mandamus ordering a public body to prepare and produce meeting minutes that it had a legal duty to prepare and maintain. *See Cincinnati Post*, 1996-

Ohio-372, at ¶ 13, 29; *see also State ex rel. Fairfield Leader v. Ricketts*, 56 Ohio St.3d 97, 101 (1990); *Ames*, 2021-Ohio-2374, at ¶ 24.

{¶ 44} In *Cincinnati Post*, a newspaper company filed a mandamus action to compel the City of Cincinnati to prepare and make available to the public the minutes for closed-door meetings attended by members of the Cincinnati City Council. *See Cincinnati Post* at ¶ 12. We concluded that Cincinnati's charter was "not inconsistent with the Sunshine Law" and that R.C. 121.22 applied. *Id*. at ¶ 27. Because we concluded that the meetings violated R.C. 121.22, *see id*. at ¶ 22-25, we issued a writ of mandamus ordering Cincinnati to "prepare and make available to the public minutes" for the meetings, *id*. at ¶ 29. And more recently, we specifically stated that "[m]andamus is an appropriate remedy to compel a public body to prepare and produce full and accurate meeting minutes under R.C. 121.22 and 149.43." *Ames* at ¶ 24.

{¶ 45} Because the Brownfield committee is subject to R.C. 121.22(C)'s requirements, a writ of mandamus is an appropriate remedy to compel respondents to prepare and produce the minutes for previously held Brownfield committee meetings attended by a majority of its members at which public business was discussed. *See* R.C. 121.22(B)(2) (defining a "meeting" as "any prearranged discussion of the public business of the public body by a majority of its members").

## F. Relators' requests for awards of court costs, attorney fees, and statutory damages

{¶ 46} In their complaint, relators requested awards of court costs, attorney fees, and statutory damages. However, relators do not include in their merit brief any arguments in support of their claims for attorney fees or statutory damages. By not including arguments in support of these claims in their merit brief, relators forfeited their claims for attorney fees and statutory damages. *See State ex rel. Data Trace Information Servs.*, *L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 2012-Ohio-753,

¶ 69. Since relators forfeited these claims, we deny relators' requests for awards of attorney fees and statutory damages.

{¶ 47} As for court costs, S.Ct.Prac.R. 18.05(A)(2) sets forth the assessment of costs at the conclusion of an original action brought in this court.  Because relators are entitled to a writ of mandamus ordering respondents to prepare and produce the minutes for previously held Brownfield committee meetings at which a majority of its members discussed public business, they are entitled to an award of court costs.  *See* S.Ct.Prac.R. 18.05(A)(2)(c); *see also* R.C. 149.43(C)(3)(a)(i).[2]

### III.  CONCLUSION

{¶ 48} We grant relators' request for a writ of mandamus against respondents.  Respondents are ordered to prepare and produce the requested minutes for previously held Brownfield committee meetings at which a majority of its members discussed public business.  We award relators court costs but deny their requests for awards of attorney fees and statutory damages.  We deny relators' "motion for costs of the proceedings" and "motion for rebuttal evidence and/or motion to strike."  We deny respondents' motion for a protective order as moot.

Writ granted.

––––––––––––––––––

Phillips & Co., L.P.A., and Gerald W. Phillips, for relators.

Seeley, Savidge, Ebert & Gourash Co., L.P.A., Gary A. Ebert, Daniel F. Gourash, and Jeffrey S. Moeller, for respondents.

––––––––––––––––––

2. The General Assembly amended R.C. 149.43 in 2024 Sub.H.B. No. 265 with an effective date of April 9, 2025.  This opinion applies the version of the statute enacted in 2024 Sub.S.B. No. 29 (effective Oct. 24, 2024).