MOSLEY, Appellant,

v.

EVANS et al., Appellees.

[Cite as *Mosley v. Evans* (1993), 90 Ohio App.3d 633.]

Court of Appeals of Ohio,
Trumbull County.

No. 91–T–4623.

Decided Sept. 30, 1993.

*E. Winther McCroom,* for appellant.

*Charles L. Richards* and *Jeffrey V. Goodman,* for appellees.

WOLFF, Judge.

This case comes before this court on appeal from a directed verdict.

On November 27, 1985, Rev. Dr. William D. Mosley, Jr. filed a complaint against twelve members of the Second Baptist Church Board of Deacons ("the Deacons") alleging libel and slander.

Mosley's action arose from a letter written to Mosley, dated July 8, 1989, and signed by the Deacons. The letter was written following a series of meetings and expressed the Deacons' belief that Mosley's health problems had prevented him from performing his duties effectively. The letter stated, in pertinent part:

" * * * it is the opinion of the Deacon Board that [your resignation] is necessary to protect the health and vitality of Second Baptist Church. We are thoroughly convinced that your general health and physical condition prohibit you from effectively performing your Pastoral responsibilities. Additionally, we are convinced that the spirituality within the church has reached a point that the only logical alternative is to change Pastoral leadership. We simply need a Pastor that is capable of providing creative leadership, new ideas, and visionary direction. Our church *must* be restored to its historical and enriched heritage." (Emphasis sic.)

The letter requested that Mosley either retire or resign and stated that if he did not elect one of these alternatives, the Deacons would recommend to the church congregation that his services as pastor be terminated.

On July 15, 1989, Mosley responded to the Deacons' request and informed them that he would neither retire nor resign. Thus, on July 25, 1989, the Deacons held a special meeting of the congregation and distributed to those members present copies of the July 8, 1989 letter. At this meeting, the congregation requested that Mosley retire and approved the terms and conditions of his retirement package. Mosley retired at this meeting.

The case went to trial before a jury on October 28, 1991. At the close of Mosley's evidence, the trial court directed a verdict in favor of the Deacons. Mosley appeals from the judgment and asserts one assignment of error.

"1. The trial court committed error prejudicial to the rights of the plaintiff by ruling that this case did not involve as a matter of law libel *per se* and thereby granted defendants' motion for directed verdict."

In this assignment of error, Mosley asserts that the trial court erred in (1) refusing to admit one of his exhibits, and (2) failing to apply the proper legal standard in determining whether the letter constituted libel *per se*. In response, the Deacons refute any allegations of error and contend that, even if the trial court did err, any such error is harmless in light of the fact that the allegedly

defamatory statements were protected by a qualified privilege. Finding this latter contention to be dispositive, we will consider it first.

In order to establish a *prima facie* case of defamation, a plaintiff is required to establish that the statement made is actionable, that the defendant published that statement to a third person, and that the recipient understood the defamatory meaning of the published statement. *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 72 O.O.2d 134, 331 N.E.2d 713. See, also, *Tohline v. Cent. Trust Co.* (1988), 48 Ohio App.3d 280, 549 N.E.2d 1223. Once this *prima facie* case is established, the defendant may avoid liability by invoking various defenses. The defense which is relevant to this case is that of qualified or conditional privilege.

A qualified privilege is said to protect "communication[s] made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, * * * [if such communication is] made to a person having a corresponding interest or duty * * *." *Hahn, supra,* 43 Ohio St.2d at 246, 72 O.O.2d at 139, 331 N.E.2d at 719, citing *West v. Peoples Banking & Trust Co.* (1967), 14 Ohio App.2d 69, 72, 43 O.O.2d 197, 199, 236 N.E.2d 679, 681. See, also, *McKenna v. Mansfield Leland Hotel Co.* (1936), 55 Ohio App. 163, 8 O.O. 463, 9 N.E.2d 166; *Landrum v. Dombey* (1971), 30 Ohio App.2d 200, 59 O.O.2d 316, 284 N.E.2d 183. This privilege even applies to statements containing matter which, without this privilege, would be actionable, and to situations in which the duty to communicate is not a legal one, "but only a moral or social duty of imperfect obligation." *Hahn, supra,* 43 Ohio St.2d at 246, 72 O.O.2d at 139, 331 N.E.2d at 719.

In order to qualify for this privilege, a defendant must establish that (1) he acted in good faith; (2) there was an interest to be upheld; (3) the statement was limited in its scope to the purpose of upholding that interest; (4) the occasion was proper; and (5) the publication was made in a proper manner and only to proper parties. *Id.* at 246, 72 O.O.2d at 139, 331 N.E.2d at 719.

Once the defendant establishes the defense of qualified privilege, the plaintiff may not recover for defamation unless he can present clear and convincing evidence that the defamatory statement was made with actual malice. *Evely v. Carlon Co.* (1983), 4 Ohio St.3d 163, 4 OBR 404, 447 N.E.2d 1290. "In a qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 116, 573 N.E.2d 609, 614.

For the purpose of this discussion, we will assume *arguendo* that Mosley was able to establish a *prima facie* case of defamation. Thus, in order to avoid

liability for its statements, the Deacons would have had to establish a defense, *i.e.*, that the statements contained in their letter were qualifiedly privileged.

Our review of the evidence in this case indicates that the Deacons properly raised the defense of qualified privilege in their amended answer, trial brief, and motion for directed verdict, and that the evidence adduced at trial during the presentation of Mosley's case clearly established the elements necessary for application of the qualified privilege, as a matter of law.

The letter in question concerned various church interests, *i.e.*, Mosley's perceived inability to perform his pastoral duties and to inspire the congregation in light of his health problems and the need to restore the spirituality of the church. It was written by members of the congregation of the church, *i.e.*, the Deacons, and published exclusively to other members of the church. No evidence was established at trial that any nonmembers were either given or otherwise received a copy of the letter. Furthermore, the letter was sent to Mosley prior to any publication and was limited in scope to informing him of the Deacons' concern as to his leadership and the future of the church if he did not resign or retire.

From this evidence, we conclude that the Deacons were entitled to the defense of qualified privilege. Therefore, Mosley could only defeat the Deacons' motion for a directed verdict and recover for defamation if he could prove by clear and convincing evidence that the Deacons acted with actual malice in publishing the letter.

■ As stated *supra*, the actual malice standard applied in defamation cases is defined as "acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs, supra*, 60 Ohio St.3d at 116, 573 N.E.2d at 614. At trial, Mosley seemed to concede that the Deacons did not act with knowledge that the statements were false. Rather, he attempted to prove actual malice by asserting that the Deacons' failure to contact Mosley's doctors or consult the church records immediately prior to drafting the letter amounted to reckless disregard as to the truth or falsity of the statements contained therein.

While it is true that the Deacons consulted neither Mosley's doctors nor the church records immediately prior to drafting the letter, we see no reason why the Deacons would be required to consult these specific sources to establish the truth of their statements. Numerous other sources of information were available to them for this purpose. For instance, several of the Deacons testified that they came to the conclusion that Mosley's health was affecting the leadership of the church through their conversations with members of the congregation, their independent observations of his performance, and repeated discussions during official meetings regarding the deteriorating financial condition and membership

of the church. Thus, the Deacons did have a factual foundation for their opinion concerning the effect of Mosley's health on his performance as pastor and did not act in reckless disregard as to the truth or falsity of their statements in the letter.

In sum, we conclude that the letter sent by the Deacons was qualifiedly privileged, and, as Mosley failed to establish actual malice, protected the Deacons from any liability concerning those statements. Thus, even were we to find that the trial court erred, as Mosley asserts in this assignment of error, in refusing to admit one of Mosley's exhibits and/or in failing to apply the proper legal standard in determining whether the letter constituted libel *per se*, the application of qualified privilege would preclude Mosley from recovering for defamation. Thus, the errors asserted by Mosley, even if substantiated by the record, would be harmless.

Accordingly, the assignment of error is overruled.

The judgment of the Trumbull County Court of Common Pleas is affirmed.

*Judgment affirmed.*

FORD, P.J., and BROGAN, J., concur.

JAMES A. BROGAN and WILLIAM H. WOLFF, JR., JJ., of the Second Appellate District, sitting by assignment.