OPINION
{¶ 1} This accelerated calendar appeal stems from a judgment of the Portage County Court of Common Pleas. Appellant, Elaine McCoy, seeks reversal of the trial court's grant of summary judgment to appellee, Jennifer Maxwell, in a defamation suit brought by appellant, on December 28, 1998.
 {¶ 2} Appellant was the Chairperson of the Political Science Department at Kent State University. Appellee was a professor in the department and director of the University's Center for Applied Conflict Management ("CACM"). In her capacity as director, appellee conducted research in the area of domestic violence. As Chairperson, appellant was appellee's direct supervisor.
 {¶ 3} From the beginning of appellant's tenure, tension existed between her and appellee. Much of the tension resulted from appellant's negative reappointment review of appellee issued in 1996, and appellee's belief that appellant was intent on abolishing the CACM.
 {¶ 4} On October 13, 1998, appellee received a bouquet of flowers from an anonymous person. An unsigned, handwritten card stating, "Thank you for just being you!" accompanied the bouquet.
 {¶ 5} Appellee immediately became alarmed. After asking her afternoon class and a few co-workers about the flowers, appellee decided to go to the florist shop and speak to the individual who took the order. An employee informed appellee that the woman who had sent the flowers was middle-aged, stocky, and dark-haired. Appellee returned with a picture of appellant. At first, the individual who took the order identified appellant as the woman who had purchased the flowers. When appellee returned two days later to obtain a written statement, however, the florist shop employee retracted her previous statement. She informed appellee that she could not state with certainty that appellant had purchased the flowers.
 {¶ 6} Appellee proceeded to file a report with the Kent State University Police Department on October 23, 1998, alleging that appellant was stalking and harassing her. The Kent State police did not investigate the matter, but told appellee to submit a written statement.
 {¶ 7} On October 30, 1998, appellee filed a written statement with the Kent State Police Department.[1] In the sixteen-page statement, appellee recounted the history of her relationship with appellant. She indicated that she was very concerned about her own personal safety and feared that appellant might "react with retaliatory physical violence" if approached.
 {¶ 8} Appellee speculated in the statement that appellant was an alcoholic. She stated that appellant had told one faculty member about her participation in a rehabilitation program and that appellant "increasingly appears to exhibit signs that *** her alcoholism is not under control." Appellee also referred to an ongoing investigation into appellant's academic credentials by some senior faculty members.
 {¶ 9} Appellee further stated that, on October 29, 1998, she met with a member of the Faculty and Staff Assistance Program and a political science faculty member to determine what action the university should take in response to her allegations.[2]
 {¶ 10} Additionally, in her statement, appellee claims that, prior to filing her written statement, she spoke to several university colleagues about her allegations. Specifically, she states that she spoke to: four senior Political Science professors; her colleagues at the CACM; a doctor at the Women's Resource Center; and, a doctor and an attorney at the faculty union. Appellee also claims, in her written statement, to have related her story to the clerk at the florist shop.
 {¶ 11} Shortly after filing the written statement with the Kent State University Police Department, appellee discovered that one of her students, not appellant, had sent her the flowers. Appellee apologized for filing the police report and the written statement in letters to the editors of Portage County newspapers.
 {¶ 12} On December 28, 1998, appellant filed a complaint against appellee, in which she stated three causes of action: malicious prosecution; libel; and, slander.
 {¶ 13} On January 21, 1999, appellee filed a motion for definite statement on the basis that appellant's libel and slander claims were not specific enough. The trial court granted the motion, on February 10, 1999.
 {¶ 14} On February 19, 1999, appellant filed an amended complaint in which she again claimed libel and slander, but dropped the malicious prosecution claim. Appellant's libel claim was based upon appellee's written report, filed with the Kent State University Police Department, which accused her of criminal conduct, stated that she was an uncontrolled alcoholic, stated that she was mentally unstable and had been sexually harassing appellee, and claimed that appellant had been stalking appellee and might try to kill her. Appellant's slander claim alleged that appellee made these statements orally to the Kent State University Police Department and to other individuals.
 {¶ 15} On August 31, 2001, appellee moved the trial court for summary judgment on the basis that any statements she made to the police department were, as a matter of law, either absolutely or qualifiedly privileged. Appellee submitted her written statement, excerpts from a deposition of appellant, and her own affidavit as exhibits. Appellant did not file a brief in opposition to appellee's motion.
 {¶ 16} On October 16, 2001, the trial court granted appellee's motion for summary judgment. It held that appellee's statements were qualifiedly privileged. It further determined that appellant had the burden of establishing actual malice to overcome qualified privilege. Because appellant had not established any proof of actual malice, the trial court granted the motion.
 {¶ 17} From the foregoing decision, appellant asserts the following assignment of error:
 {¶ 18} "The trial court committed prejudicial error as a matter of law in granting summary judgment dismissing plaintiff's defamation action."
 {¶ 19} The standard of review for an appeal of a grant of summary judgment is de novo. Wade v. Scheib (Jan. 29, 1999), 6th Dist. No. F-98-007, 1999 Ohio App. Lexis 177, at *4. "In applying the de novo standard, [the appellate court] review[s] the trial court's grant of summary judgment independently and without deference to the trial court's determination." Id., citing Brown v. Scioto Cty Bd. of Comm'rs. (1993),87 Ohio App.3d 704, 711.
 {¶ 20} The Ohio Supreme Court clarified the summary judgment standard under Civ.R. 56 in Dresher v. Burt (1996), 75 Ohio St.3d 280,293:
 {¶ 21} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party."
 {¶ 22} A moving party who meets her initial burden must also establish that she therefore deserves judgment as a matter of law, and that reasonable minds, when viewing the evidence in a light most favorable to the nonmoving party, can only come to a conclusion adverse to the nonmovant. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. If the nonmoving party fails to respond to the motion, the moving party's affidavits are accepted as true. Gannett v.Booher (1983), 12 Ohio App.3d 49, 50.
 {¶ 23} Appellant argues that appellee did not satisfy all of the elements of qualified privilege as set forth by this court in Mosley v.Evans (1993), 90 Ohio App.3d 633. She also maintains that, even if appellee satisfied the elements of qualified privilege, reasonable minds could disagree as to whether she submitted the statement with actual malice. Therefore, appellant argues, the trial court should not have granted summary judgment to appellee.
 {¶ 24} Appellee maintains that this court should affirm the trial court's grant of summary judgment because a party attempting to invoke qualified privilege only bears the burden of establishing that the alleged defamatory statements were made in good faith.
 {¶ 25} Appellee contends that there is no genuine issue of material fact as to whether her statement was submitted to the police in good faith. She submitted an affidavit asserting that her statement was made in good faith and that she investigated the matter thoroughly before going to the police.
 {¶ 26} Appellee also argues that appellant could have overcome qualified privilege only by producing some evidence that the statement was made with actual malice, an element upon which appellant would bear the burden of proof at trial. Since appellant presented no evidence on the issue of actual malice, appellee argues that she was entitled to judgment as a matter of law.
 {¶ 27} "A qualified privilege is said to protect `communication[s] made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, *** [if such communication is] made to a person having a corresponding interest or duty * * *.'" Mosley v. Evans (1993), 90 Ohio App.3d 633,636, quoting Hahn v. Kotten (1975), 43 Ohio St.2d 237, 246. A defendant may invoke the affirmative defense of qualified privilege when the statement at issue was made to a police department. Hartung-Teter v.McKnight (June 26, 1991), 3rd. Dist. No. 4-91-2, 1991 Ohio App. Lexis 3008, at *3. "Not all statements given to the police are protected by a qualified privilege, however." Olsen v. Wynn (May 23, 1997), 11th Dist. No. 95-A-0078, 1997 Ohio App. Lexis 2239, at *15.
 {¶ 28} In Mosley, supra at 636, this court set forth the elements that a defendant must prove to invoke the defense of qualified privilege:
 {¶ 29} "a defendant must establish that (1) he acted in good faith; (2) there was an interest to be upheld; (3) the statement was limited in its scope to the purpose of upholding that interest; (4) the occasion was proper; and (5) the publication was made in a proper manner and only to proper parties." Id., citing Hahn v. Kotten (1975),43 Ohio St.2d 237, 246.
 {¶ 30} A defendant moving for summary judgment on the basis of qualified privilege must present sufficient evidence to demonstrate that no genuine issue of material fact exists as to each of the elements of the affirmative defense. Olsen, at *16, citing Dresher, supra. If the defendant can establish that there is no genuine issue of material fact on each element, then the plaintiff can only overcome qualified privilege by establishing with convincing clarity that defendant acted with actual malice. In a summary judgment motion claiming an affirmative defense, however, the nonmoving plaintiff does not have to present any evidence unless the defendant first satisfies her burden. Dresher, supra.
 {¶ 31} In her written statement to the police, appellee speculated that appellant was an alcoholic. She also called into question appellant's mental stability, suggested that appellant might pose a threat to her, and even referred to an investigation into appellant's academic credentials.
 {¶ 32} While it appears that appellee's written statement may have been made in good faith, to uphold the interest of her safety, on a proper occasion to the proper parties, appellee presented no evidence demonstrating that her written statement, containing the aboveallegations, was sufficiently limited in scope to be entitled to the defense of qualified privilege on appellant's libel claim. In her affidavit, appellee could perhaps have explained how statements about appellant's alleged alcoholism and about appellant's academic credentials were made to protect her safety; however, appellee did not address these issues. Furthermore, with respect to her slander claim, appellee failed to present evidence in her affidavit demonstrating that no genuine issue of material fact exists on the elements of limited scope, proper occasion, proper manner, and proper parties.
 {¶ 33} A party claiming the affirmative defense of qualified privilege as the basis for a summary judgment motion must establish more than good faith to prevail. She must demonstrate no genuine issue of material fact with respect to every element of the defense. Appellee only established the good faith element in her affidavit.
 {¶ 34} In the instant case, appellee did not satisfy the Dresher
standard with respect to each element of the qualified privilege defense. Therefore, appellant's failure to produce any evidence on the element of actual malice does not warrant a grant of summary judgment to appellee.
 {¶ 35} The trial court should have addressed the issue of actual malice only if appellee had first satisfied the Dresher standard with respect to each element of the qualified privilege defense as set forth in Mosley and Olsen. Because appellee did not satisfy her initial burden, the trial court should not have granted summary judgment.
 {¶ 36} Accordingly, based on the foregoing analysis, we reverse the decision of the Portage County Court of Common Pleas granting summary judgment to appellee, and remand the matter to the trial court for further proceedings consistent with this opinion.
WILLIAM M. O'NEILL, P.J., and DONALD R. FORD, J., concur.
[1] Appellee incorrectly dated her written statement, November 23, 1998. In fact, appellee filed her written statement with the Kent State University Police Department, on October 30, 1998. The incorrect date appears in some of the documents in the trial record.
[2] In her written statement to the police, appellee mentions a meeting with a member of the Faculty and Staff Assistance Program and a fellow political science professor, which took place on October 29, 1998. She states that the purpose of the meeting was to determine what course of action the university should take. She does not indicate whether the university ever commenced an internal investigation nor does the record contain any reference to an internal investigation.