[Cite as *Landers v. Montgomery Cty. Veterans Serv. Comm.*, 2025-Ohio-4971.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| MARK E. LANDERS | : | |
| | : | C.A. No. 30370 |
| Appellant/Cross-Appellee | : | |
| | : | Trial Court Case No. 2023 CV 00092 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| MONTGOMERY COUNTY VETERANS | : | Court) |
| SERVICE COMMISSION, ET AL. | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellees/Cross-Appellant | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on October 31, 2025, the judgment of the trial court is reversed regarding back pay and affirmed in all other aspects. The case is remanded to the Montgomery County Veterans Service Commission for further proceedings consistent with the opinion.

Costs to be paid as follows: 50% by the Appellant and 50% by the Appellees.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

CHRISTOPHER B. EPLEY, PRESIDING JUDGE

LEWIS, J., and HUFFMAN, J., concur.

**OPINION**

MARK E. LANDERS, Pro Se Appellant/Cross-Appellee
TODD M. AHEARN, Attorney for Appellee/Cross-Appellant

EPLEY, P.J.

{¶ 1} Plaintiff-Appellant/Cross-Appellee Mark E. Landers and Defendant-Appellee/Cross-Appellant Montgomery County Veterans Service Commission ("VSC") both appeal from the judgment of the Montgomery County Court of Common Pleas which (1) granted summary judgment to Landers on his Open Meetings Act ("OMA") claim and concluded that the termination of his employment was invalid and (2) granted summary judgment to the VSC on Landers' defamation claim. Landers argues that the trial court should have awarded more damages for violations of the OMA and that it erred by granting summary judgment in favor of the VSC on his defamation claim. The VSC, on the other hand, argues that invalidating the termination of Landers' employment due to alleged OMA violations was improper, but, even if it were not, the trial court erred in awarding back pay and post-judgment interest.

{¶ 2} For the reasons that follow, the trial court's award of $200,780.76 in back pay is overruled, but the judgment of the trial court is affirmed in all other respects.

I.      **Facts and Procedural History**

{¶ 3} In the summer of 2018, Landers, an Army veteran and lawyer, was hired by the VSC to be its executive director. He had previously served as a commissioner. Despite the statutory mandate that the VSC executive director be an unclassified/at-will employee serving at the pleasure of the commission, Landers crafted – and the commissioners signed – an employment agreement. The agreement called for a three-year term which would

automatically be renewed each year for an additional year and would offer $110,000 in salary, plus other benefits. Importantly, Landers drafted the agreement so that he could only be terminated for committing "a material act of dishonesty."

{¶ 4} The accounts of Landers' first year as executive director are divergent. According to Landers, he worked tirelessly to clean up a dysfunctional and corrupt office culture, save money, and improve service to the veterans they served. He described his managerial style as "get the job done," and in his deposition, admitted that there were employees who did not appreciate some of his policies, such as sending daily emails about what was accomplished. Landers also described being the public face of the VSC and testified that a media blitz resulted in a huge increase of claims. "Landers [speaking in the third person] was going everywhere, on television, on radio, on local cable, etc., etc., plus going to any library[.]" Deposition Tr. 141. He was a "constant presence on television, radio, . . . and was the voice of [the VSC] in connecting veterans to the benefits they earned." Complaint at 4-5. Landers claims that he was referred to as the "Colonel" in the veteran community and the VSC's radio ads. Complaint at 5.

{¶ 5} While Landers may have considered himself a badly needed agent of change, there were those at the VSC office who did not care for his methods. Stephen Ashley Webb, a commissioner at the time, testified that one person expressed that dealing with Landers was difficult and described his actions as "bullying." Trial Tr. at 73. Another employee, Missy Zimmer, whom Landers had known for years and whom he had months earlier hired in an administrative role, sent an email to commissioner John Meeks expressing her concerns about "the hostile work conditions [Landers] has created at our office." Defendant's Deposition Exhibit 4; Plaintiff's Trial Exhibit 8. The issues between Zimmer and Landers worsened after she experienced health issues and ran out of "sick days" to use while she

3

recovered. She explained in the email that Landers was "very angry" that she had not returned to work on time and that "he has no sympathy or compassion for others, which is contrary to his public speakings [sic]." Defendant's Deposition Exhibit 4; Plaintiff's Trial Exhibit 8; Deposition Tr. at 182-183. She concluded that while she loved her job, the hostile environment made returning to work impossible.

{¶ 6} Prompted by the email from Zimmer, the commission initiated an investigation into Landers and the work environment at the VSC office. The result of the inquiry was a document titled "Information from Interviews" that was introduced at a commission meeting. Defendant's Deposition Exhibit 7. The document featured 86 bullet points of staff concerns and examples of workplace hostility, including:

- "Uses staff meetings to berate staff, has made remarks that can be racist."

- "He bulldogs employees and calls them whiny."

- "Mr. Landers micromanages all the staff."

- "Mr. Landers demanded to see the personal phone of a staff member so he could read texts/emails on an issue."

- "Berated Missy in a staff meeting. Mr. Landers stated in front of the entire staff that Missy was overpaid and that when she had her tumor removed that she should ask to have her whole brain removed."

- "He's forceful, in your face, demanding that his issue be priority #1 and has no regard to the staff member's workload."

- "Mr. Landers shows anger towards any staff member that disagrees with him. He calls them names in front of the other staff members. This is on a daily basis."

4

{¶ 7} After the investigation concluded, the commissioners held several board meetings during which they entered into executive sessions "for personnel matters." After the executive session on August 12, 2019, the commissioners voted to place Landers on paid administrative leave pending the conclusion of their investigation. August 12 VSC Meeting Minutes; Defendant's Deposition Exhibit 5.

{¶ 8} The commission held another meeting on August 21, 2019 where they again entered executive session "for a personnel matter." August 21 VSC Meeting Minutes; Defendant's Deposition Exhibit 6. Landers testified that commissioners asked questions about certain employees and interactions because "some people felt the office was not as positive as it could be." Deposition Tr. at 215.

{¶ 9} The minutes of a September 12, 2019 meeting show that after going into executive session "for a personnel matter," Commissioner Webb moved to terminate Landers' employment "for cause, effective 30 days after he has received notice." Defendant's Deposition Exhibit 8. Landers testified that he was not at this meeting and did not receive notice of his termination until a later date when Commissioner Federico Rojas came to his house with the termination letter. That account conflicts with the meeting minutes which indicate Landers was in attendance.

{¶ 10} Landers filed a lawsuit related to his termination in the common pleas court in 2020 but dismissed it under Civ.R. 41(a) in January 2022. When he refiled a year later, the new complaint listed six causes of action including: (1) Breach of Contract; (2) Defamation, Libel, Slander, and Otherwise False Light; (3) Secret Meeting Violation of R.C. 121.22; (4) Violation of R.C. 4122.02, et. al, Ohio Civil Rights Statute Title VII, U.S. Civil Rights Act, Americans with Disabilities; (5) Procedural and Substantive Due Process Violation; (6)

5

Declaratory Judgment. The VSC, the individual commissioners, and Missy Zimmer were all named as defendants.

{¶ 11} On February 3, 2023, the VSC filed a partial Civ.R. 12(B)(6) motion to dismiss, asking the trial court to dismiss Counts One (breach of contract), Five (due process violations), and Six (declaratory judgment). As to Count One, the commission argued that the contract was unenforceable because under Ohio law, a veterans services commission must employ its executive director on an "at will" basis. R.C. 5901.06 states that the executive director is an unclassified employee, serves at the pleasure of the commission, and may be removed at any time without cause. Relatedly, the VSC argued that Count Five should be dismissed because as an unclassified employee, someone who could be terminated at any time for any reason, Landers had no due process property right to his job. The commission further argued that Count Six was substantially similar to Count One and should be rejected accordingly. On May 17, the trial court granted the motion to dismiss Counts One, Five, and Six.

{¶ 12} Landers filed a motion for partial summary judgment (Counts Three and Five) on July 10, 2023. He argued that there were violations of the OMA and that as a "veteran service officer" and the executive director of the VSC, he had a property interest in his job; therefore, he was owed due process before his termination. The trial court denied his motion.

{¶ 13} The VSC filed its motion for summary judgment on the remaining Counts (Two, Three, and Four) on November 21, 2023. The trial court granted summary judgment on the defamation/libel/slander/false light claim (Two) and the civil rights claim (Four). As to defamation, the court found that Landers was a "public official," so he needed to prove that the VSC and the individual defendants acted with "actual malice" when they made critical statements about him. According to the trial court, they did not, and thus the claim failed as

6

a matter of law. As to the discrimination claim, the court reasoned that there was no evidence that the decision to terminate Landers was based upon any "disability" rather than creating a hostile work environment.

{¶ 14} Even though the trial court ruled in favor of the VSC on Counts Two and Four, it did not grant the motion as to count Three. The court found that the commission meeting minutes and the affidavit of Landers created a genuine issue of material fact regarding compliance with the executive session requirements set forth in R.C. 121.22(G)(1). Decision at 7. In other words, a trial was necessary to determine whether Landers was terminated in compliance with the OMA.

{¶ 15} A bench trial was held on March 18, 2024. The court heard testimony from Landers and Commissioners Rojas and Webb, and it considered ten exhibits. Two days later, the court issued its decision finding that the VSC had violated the OMA eight times, including at the meeting during which Landers was terminated. In accordance with the statute, the court awarded Landers $1,500 in civil forfeitures representing three sets of violations of the law. The trial court also determined that because the decision to terminate Landers' employment was done in violation of the OMA, it was a void action. Finally, the court awarded two years of back pay, ending June 24, 2021. However, due to the lack of testimony on the matter, neither non-salary benefits nor attorney fees were awarded. The issue of whether the commissioners or Zimmer were individually liable was not settled.

{¶ 16} A few days later, Landers filed a "Motion to Correct Trial Decision and Judgment Entry." In it, he argued that because he was never properly terminated, he should be reinstated as executive director of the VSC until terminated in accordance with the OMA. He also demanded additional lost wages, vacation benefits, retirement benefits, and pre- and post-judgment interest. The trial court overruled the motion the next day.

7

{¶ 17} In April 2024, both parties appealed, but, because the issues of damages and liability of all named defendants with respect to Count Three of the complaint were still unresolved, we remanded the matter to the trial court to resolve these issues and render a final appealable order. After the trial court officially calculated damages, both parties appealed again.

{¶ 18} In his appeal, Landers raises three assignments of error. First, he claims that the "trial court erred when it limited . . . damages to three years and no benefits payable to Ohio Public Employee Retirement System." Second, he asserts that the trial court erred when it failed to award attorney fees, pre-and-post-judgment interest, salary, and benefits. Third, he argues that the trial court should not have denied his defamation claim. In its cross appeal, the VSC argues that the trial court erred in invalidating Landers' termination. The VSC further asserts that even if the invalidation were proper, the court abused its discretion by awarding back pay and post-judgment interest.

{¶ 19} We will address the assignments of error in a way that facilitates our analysis.

## II.   Defamation

{¶ 20} We begin with Landers' third assignment of error in which he contends that the trial court erred when it granted summary judgment to the VSC on his defamation claim. Specifically, he argues that the trial court erred when it found that he was a "public official" for purposes of its analysis.

Summary Judgment

{¶ 21} Pursuant to Civ.R. 56(C), a movant is entitled to summary judgment when that party demonstrates that there is (1) no issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only

8

one conclusion, and that conclusion is adverse to the non-moving party. *Rhododendron Holdings, LLC v. Harris*, 2021-Ohio-147, ¶ 22 (2d Dist.).

{¶ 22} "The burden of showing that no genuine issue exists as to any material fact falls upon the moving party requesting a summary judgment." *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66 (1978). Once the moving party has satisfied its burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The nonmoving party cannot rely upon the mere allegations or denials in the pleadings but must give specific facts showing that there is a genuine issue for trial. Civ.R. 56(E). *Accord Geloff v. R.C. Hemm's Glass Shops, Inc.*, 2021-Ohio-394, ¶ 14 (2d Dist.). When the standard is met, summary judgment must be awarded as a matter of law.

{¶ 23} We review a trial court's ruling on a summary judgment motion de novo. *Martcheva v. Dayton Bd. of Edn.,* 2021-Ohio-3524, ¶ 35 (2d Dist.).

Defamation, Libel, and Slander

{¶ 24} "Defamation is defined as a false publication which injures a person's reputation." *Dale v. Ohio Civ. Serv. Employees Assn.*, 57 Ohio St.3d 112, 117 (1991). It is a broad term that encompasses both libel (written or printed defamatory statements) and slander (spoken defamatory statements). *Boyd v. Archdiocese of Cincinnati*, 2015-Ohio-1394, ¶ 35 (2d Dist.). "To prevail on a claim of defamation, the evidence must establish (1) a false and defamatory statement concerning the plaintiff; (2) publication of the statement; (3) fault; and (4) harm." *Wilson v. Wilson*, 2007-Ohio-178, ¶ 12 (2d Dist.).

{¶ 25} The degree of fault needed to be successful on a defamation claim depends, to some extent, on the plaintiff's status – whether he or she is a public or private

9

figure/official. "A person properly classified as a public official or a public figure may recover for defamation only on clear and convincing evidence that the defendant acted with actual malice – that is, with knowledge that the defamatory statement was false or with reckless disregard for whether it was false or not." *Anderson v. WBNS-TV, Inc.*, 2024-Ohio-4880, ¶ 30 (10th Dist.).

{¶ 26} If a plaintiff establishes a prima facie case, the defendant may then invoke a conditional or qualified privilege. *Jackson v. Columbus,* 2008-Ohio-1041, ¶ 9. A defendant demonstrates a qualified privilege by showing that "(1) he acted in good faith; (2) there was an interest to be upheld; (3) the statement was limited in its scope to the purpose of upholding that interest; (4) the occasion was proper; and (5) the publication was made in a proper manner and only to proper parties." *Mosley v. Evans*, 90 Ohio App.3d 633, 636 (11th Dist.1993); *Janiszewski v. Belmont Career Ctr.*, 2017-Ohio-855, ¶ 85 (7th Dist.). A qualified privilege may be defeated only by clear and convincing evidence of actual malice from the defendant. *Jacobs v. Frank*, 60 Ohio St.3d 111, 114-15 (1991).

{¶ 27} Landers argues there were two sets of allegedly defamatory statements. The first is the email sent to Commissioner Meeks from Missy Zimmer alleging that Landers had created a hostile work environment. The second is the VSC's responses to a questionnaire from the Ohio Department of Job and Family Services after Landers applied for unemployment benefits. His argument on appeal revolves solely around the question of whether he was a public official when the statements were made. We do not need to address this issue, however, because we conclude that these statements were covered by a qualified privilege.

{¶ 28} We begin with the email from Zimmer to Commissioner Meeks. Zimmer had suffered a series of health problems, the worst of which was a brain tumor. As she was

10

approaching her return to work, she sent an email message to one of the commissioners expressing her concern about returning to work under the conditions Landers had created. In it, Zimmer accused Landers of being "very angry" that she had not returned to work on time, that "he [had] no sympathy or compassion to others," and that she had "been so stressed by him over the last seven months, let alone the inferior name calling, not only at me but to our staff as well." Deposition Tr. at 177-192; Deposition Ex. 4. She stressed that she had tried to deal with the situation on her own, but her "health [had] become a major factor."

{¶ 29} We find the elements of a qualified privilege are met with Zimmer's email. She sent an email with the concerns she had about the workplace to a commissioner in hopes that she could obtain some resolution. The interest was simply to ensure the VSC was a safe environment, and the scope of the email was limited to only that. Based on the record, there is no reason to believe that Zimmer did anything but act in good faith. Zimmer's email to Commissioner Meeks was not defamatory.

{¶ 30} The same can be said for the commission's interaction with the Ohio Department of Job and Family Services. Upon termination, Landers filed for unemployment benefits from the Ohio Department of Job and Family Services. In response, the agency sent a standard questionnaire ("Request to Employer for Separation Information") to the VSC to complete. While Landers does not point to any specific response as being violative, there were several questions that elicited answers from the commission that included references to him being terminated due to complaints of a hostile work environment and for engaging in a "material act of dishonesty." Deposition Ex. 9. The answers given by the VSC were directed solely to the Ohio Department of Job and Family Services Office of Unemployment Insurance Operations and were limited to responses to specific questions

11

regarding Landers' termination. The information was only transmitted at all because Landers filed for unemployment benefits.

{¶ 31} These types of answers should be protected so that employers can truthfully respond to questions posed by administrative agencies without fear of being sued to determine who qualifies for benefits. Accordingly, the VSC's answers to the questionnaire are protected by a qualified privilege. *See also Wrenn v. Ohio Dept. of Mental Health and Mental Retardation*, 16 Ohio App.3d 160, 162 (10th Dist. 1984) (comment on the reasons for discharge of an employee is privileged where requested by the unemployment compensation office for evaluation of an application).

{¶ 32} Because we found that a qualified privilege attached to the VSC's answers, Landers must demonstrate that the commission acted with actual malice to be successful on his claim. Landers failed to address this issue, and we can find no evidence that the VSC knew the statements were false. The answers seem to be closely tethered to the extensive record in this case.

{¶ 33} Because a qualified privilege attached to the email from Zimmer to Commissioner Meeks, as well as to the answers on the questionnaire from the state unemployment office, we must conclude, as the trial court did, that summary judgment in favor of the VSC as to defamation was proper. Having concluded so, it is unnecessary to discuss whether Landers was a public official. His third assignment of error is overruled.

III.     Open Meetings Act

{¶ 34} Landers' first assignment of error and the VSC's sole assignment of error on cross appeal center on the Open Meetings Act, R.C. 121.22. Landers argues that because he was terminated in violation of R.C. 121.22(G), he has yet to be properly terminated and is entitled to reinstatement with full back pay and benefits (the trial court awarded him

12

approximately $200,000 in back pay based on his purported 3-year contract, but no benefits). He calls the trial court's decision to award him only $200,000 "arbitrary and capricious," and claims that it is unsupported by facts or law. Appellant's Brief at 10.

{¶ 35} The VSC contends that the trial court erred by invalidating Landers' dismissal based on a "technical violation" of the OMA. It also argues in the alternative – that even if the invalidation of the dismissal were proper, the court abused its discretion in awarding back pay and post-judgment interest.

Open Meetings Act

{¶ 36} The Open Meetings Act (sometimes referred to as the "Sunshine Law"), codified in R.C. 121.22, mandates that public bodies conduct official actions and deliberations in meetings accessible to the public. The statute is designed to promote transparency and accountability in government operations by requiring public access to decision making processes. *Tipton v. Mad River Local Bd. of Ed*, 2023-Ohio-3733, ¶ 15 (2d Dist.); R.C. 121.22 generally.

{¶ 37} R.C. 121.22(C) requires the preparation, filing, and maintenance of a public body's minutes, and R.C. 149.43, the Public Records Act, requires that the public have access to the minutes upon request. Read together, the public body has a duty to prepare, file, and maintain full and accurate minutes of each meeting, and the "minutes must contain sufficient facts and information to permit the public to understand and appreciate the rationale behind the relevant public body's decision." *White v. Clinton Cty. Bd. of Commrs.*, 76 Ohio St.3d 416 (1996), syllabus.

{¶ 38} While the law's purpose is to expose the general public to the machinations of boards, councils, and commissions, it does not mandate that *all* discussions of those bodies be in the open. According to R.C. 121.22(G), members of a public body may hold an

13

executive session to "consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints against a public employee, official, licensee, or regulated individual," unless that person requests a public hearing. If an executive session is held, the motion and vote to hold the session "shall state which one or more of the approved purposes listed in division (G)(1) . . . are the purposes for which the executive session is to be held[.]" R.C. 121(G)(1).

{¶ 39} "Any 'resolution, rule, or formal action' by a public body is invalid if it fails to comport with the OMA." *Tipton* at ¶ 15, quoting R.C. 121.22(H). Unless the deliberations were for a purpose specifically authorized in R.C. 121.22(G), the resulting action is void.

{¶ 40} Any person may bring an action to enforce the OMA in the court of common pleas, but it must be filed within two years of the date of the alleged violation or threatened violation. The party seeking the injunction has the burden of proof by clear and convincing evidence. *Keystone Commt. v. Switzerland of Ohio Sch. Dist. Bd. of Edn*., 2016-Ohio-4663, ¶ 26 (7th Dist.). Upon proof of a violation or threatened violation, "the common pleas court shall issue an injunction to compel the members of the public body to comply with [the statute's] provisions." R.C. 121.22(I)(1). If an injunction is issued, the court shall order the public body to pay a civil forfeiture of five hundred dollars to the party that sought the injunction, as well as all court costs, and (subject to reduction) reasonable attorney fees. R.C. 121.22(I)(2)(a).

{¶ 41} Our analysis must begin with whether the VSC violated the OMA, and if so, to what degree.

{¶ 42} While the record does not contain any transcripts of the commission meetings in question, it does contain the minutes of at least eight meetings in which it is recorded that

14

the commission entered into executive session "for a personnel matter." That includes the August 12, 2019 meeting at which the commission returned from executive session to place Landers on paid administrative leave and the September 12, 2019 meeting at which they returned to open session and voted to terminate Landers "for cause, effective 30 days after he [had] received notice."

{¶ 43} It is clear that entering into executive session "for a personnel matter" does not comply with R.C. 121.22(G), which lists specific reasons needed to enter executive sessions including to "consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints against a public employee, official, licensee, or regulated individual." We conclude, as the trial court did, that by entering into executive session by using non-statutory language, the VSC violated the OMA. *See also State ex rel. Long v. Cardington Village Council*, 92 Ohio St.3d 54, 59 (2001) (By using a general term like "personnel" instead of one of the specified statutory purposes, respondents violated R.C. 121.22(G)(1)).

{¶ 44} Nevertheless, the VSC argues that these were only "technical violations," and Landers' termination should stand. This theory seems to come from *Doran v. Northmont Bd. of Edn.*, 147 Ohio App.3d 268 (2d. Dist. 2002). In *Doran*, the school board failed to adopt a formal public notice rule, an OMA violation. However, the actions of the board were not invalidated because the public, including Doran, had received sufficient notice of the meeting. Pursuant to R.C. 121.22(H), "[a] resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were for a purpose specifically authorized in division (G) or (J) of this section and conducted at an executive session held in compliance with this section." We

15

reasoned that the purpose of R.C. 121.22(H) was to invalidate official actions only when the lack of notice prejudices the general public's ability to participate in a meeting.

{¶ 45} Since *Doran*, however, the legal landscape has changed. The Ohio Supreme Court has held that irreparable harm and prejudice are conclusively presumed with proof of an OMA violation, thus invalidating any action adopted afterwards. *State ex rel. Bates v. Smith*, 2016-Ohio-5449, ¶ 16-17; *Keystone*, 2016-Ohio-4663, ¶ 38; *State ex rel. Mohr v. Colerain Twp.*, 2022-Ohio-1109, ¶ 25 (1st Dist.); *State ex rel. Jones v. Bd. of Edn. of Dayton Pub. Schools*, 2020-Ohio-4931, ¶ 10 ("R.C. 121.22(H) requires invalidation of actions taken at meetings that violate the Open Meetings Act."). Based on the Ohio Supreme Court's position and the plain language of R.C. 121.22(H), we find, as the trial court did, that entering into executive session "for a personnel matter" violated the OMA, and thus invalidated Landers' termination.

Damages and Remedies

{¶ 46} Having found violations of the OMA, we must now determine the damages available to Landers.

*Injunctive Relief and Monetary Damages*

{¶ 47} In addition to the violation at the meeting during which Landers was purportedly fired, the trial court found seven other violations of the OMA based on deficiencies in the minutes. Several of the violations included (1) failure to regularly and completely list attendees at the meetings; (2) failure to recite (except for one occasion) that there was a vote on the approval of minutes of prior meetings; (3) complete lack of any substantive details about business items discussed and decided which would explain the reasons for the decisions; and (4) lack of accuracy. Decision and Entry at 6. It held that "the minutes [were] mere conclusory recitals of the roll call votes concerning vaguely defined

16

subject matters. Such brevity is non-complaint with Ohio law." *Id*. at 7. While the trial court found eight separate violations, Landers is not necessarily entitled to the statutory $500 forfeiture award for each one. In accordance with *Maddox v. Greene Cty. Children Servs. Bd. of Dirs*., 2014-Ohio-2312 (2d Dist.), the trial court separated the eight violations into three categories and awarded a total of $1,500 in civil forfeitures. Neither party seems to challenge this result, and based on the record, we cannot say the trial court erred in reaching this outcome.

**{¶ 48}** Where the parties differ is in their arguments relative to the trial court's decisions on reinstatement and back pay. We will begin with our analysis of reinstatement.

**{¶ 49}** Landers argues he should be reinstated because his termination was in violation of the OMA and was thus invalid. R.C. 121.22(H). He further points out that many years later he has still not been validly fired. While we agree that his termination was invalid, reinstatement is not an available remedy. This conclusion comes from the plain language of the statute.

**{¶ 50}** According to R.C. 121.22(I)(1), "Upon proof of a violation or threatened violation of this section in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions." If the court issues the injunction, it "shall order the public body that it enjoins to pay a civil forfeiture of five hundred dollars to the party that sought the injunction and shall award to that party all court costs and, subject to reduction as described in division (I)(2) of this section, reasonable attorney's fees." R.C. 121.22(I)(2)(a). The statute does not authorize reinstatement or other employment-related remedies, and this underscores the general assembly's intent to prioritize compliance with the statute's transparency requirements over

17

other forms of relief. Had the legislature intended to give employment-related relief in addition to the specified injunctions and forfeitures, it could have done so.

{¶ 51} Landers urges us to conclude that the trial court erred in not reinstating him, following the precedent he believes was set in *Maddox,* 2014-Ohio-2312 (2d Dist.). The *Maddox* court, however, did not order the plaintiff's employment reinstated but instead left back pay in place from the time she was invalidly terminated until the time her former position was eliminated due to the merger of two public offices.

{¶ 52} Because R.C. 121.22 does not contemplate reinstatement as a remedy for a violation of the OMA, we cannot say the trial court erred by not ordering Landers' reinstatement as executive director of the VSC.

{¶ 53} Landers also asserts that the trial court erred in awarding him only $200,780.76 in back pay. The court found Landers should be compensated for lost wages from October 25, 2019 (the date of his wrongful termination) through June 24, 2021 (the termination date of his three-year employment agreement), a span of 86 weeks. It is his contention that such an outcome is unsupported by facts or law and is arbitrary and capricious. Appellant's Brief at 10. Landers argues that he should be compensated from his purported termination date until he is fired in accordance with the OMA. Since that has yet to happen, he argues that he should continue to receive back pay. Appellant's Brief at 11. While we agree that the trial court erred in awarding Landers more than $200,000 in back pay, we do so not because we think it is not enough, but because that relief is unavailable under the statute.

{¶ 54} The OMA has a very specific purpose – to ensure that public bodies, like the VSC, deliberate and take actions in the open to promote transparency and accountability. As the Seventh District has said, "The deliberative process leading up to the action must be

18

transparent to the public. This process ensures that a public body remains fully accountable to the public which it serves." *Keystone* at ¶ 39. Likewise, the OMA has specific remedies – injunctive relief, civil forfeiture of $500 per violation, court costs, and attorney's fees. All the remedies are focused on the public body to ensure it complies with the transparency and accountability goals of the act. Awarding employment focused remedies like back pay may benefit Landers, but it does not further the purposes of the OMA and was not prescribed by the legislature. The type of relief Landers seeks is more in-line with causes of action like breach of contract, which we would note was rejected by the trial court and not appealed here.

{¶ 55} Even though this outcome is in harmony with both the plain language of and the policy behind R.C. 121.22, Landers again directs our attention to *Maddox*, 2014-Ohio-2312 (2d Dist.). There, the former executive director of the Greene County Board of Children Services was placed on leave on April 26, 2012 after an executive session "for a personnel matter." Months later she was fired. After filing suit for violations of the OMA, the trial court held that the April 26 executive session lacked the specificity required by the OMA and that Maddox's placement on administrative leave was invalid. It granted her injunctive relief and compensation from April 26 until June 26 when the board formally terminated her. The court also awarded reasonable attorney fees and a $500 statutory civil forfeiture. It later found additional violations of the OMA and concluded that Maddox's termination was invalid.

{¶ 56} The Board of Children Services appealed, raising, among other things, that the trial court erred in penalizing it for not reciting the precise statutory language before going into executive session. We found that R.C. 121.22(G) was violated by using a general term like "personnel" before going into executive session instead of one or more of the specified statutory purposes. "[A] non-specific reference to 'personnel matters' or 'personnel issues'

19

does not satisfy R.C. 121.22(G)" *Maddox* at ¶ 21. Because Maddox was terminated after improper deliberations, we found her termination was invalid and that before she could be fired, the board was required to re-deliberate in compliance with R.C. 121.22(G). *Maddox* at ¶ 36-37.

{¶ 57} As to the issue of back pay, the Board of Children Services also argued that the trial court erred in finding liability for multiple forfeitures, attorney fees, and Maddox's back pay from June 26, 2012, to November 20, 2012. While our Opinion spent a great deal of time addressing the number of civil forfeitures and the amount of attorney fees, and a few sentences deciding when back pay should cease, we did not address – *at all* – the propriety of the back pay award. It is unclear whether that issue was even addressed by the parties or if it was simply assumed that back pay was an appropriate remedy.

{¶ 58} Based on the lack of discussion about the propriety of the back pay issue in *Maddox*, we do not see the case as an endorsement of back pay as a proper remedy or damages for violations of the OMA. To the extent that Opinion is supportive of back pay as a remedy, we disagree and would overrule that portion. There is simply nothing in the statute or beyond that supports such an outcome. Landers is not entitled to back pay. The judgment of the trial court is reversed as to back pay.

{¶ 59} Having found no basis in the statute for reinstatement or back pay, we similarly must reject Landers' argument that he is entitled to benefits. R.C. 121.22 provides for specific remedies for violations of the act, and the recoupment of lost benefits is not one of them.

{¶ 60} Based on the foregoing, we must overrule Landers' first assignment of error in which he argues that the trial court erred when it limited his damages to three years and no benefits payable to OPERS. The trial court erred in granting Landers more than $200,000

20

in back pay because that relief is unavailable under the OMA. The trial court did not, however, err by refusing to grant benefits.

{¶ 61} The VSC's assignment of error is sustained in part and overruled in part. It is overruled as to the argument that the OMA violations were "technical" in nature and would not affect Landers' termination. As to the contention that the court erred in awarding back pay, the assignment of error is sustained.

## IV.    Attorney Fees and Interest

{¶ 62} Landers' second assignment of error argues that the trial court erred when it did not award attorney fees, pre-judgment and post-judgment interest, salary, and benefits from October 12, 2019 until he is terminated in compliance with R.C. 121.22. We previously concluded that Landers was not entitled to back pay and benefits because those remedies are not contemplated by the statute.

{¶ 63} Landers contends that he should receive attorney fees. This argument stems from R.C. 121.22(I)(2)(a), which states that if a court of common pleas issues an injunction, the court shall order the public body to pay a civil forfeiture of five hundred dollars to the party that sought the injunction and "shall award to that party all court costs and . . . *reasonable attorney fees*." (Emphasis added.)

{¶ 64} Ohio courts have consistently held that pro se litigants, including licensed attorneys representing themselves, are not entitled to attorney fees. *See State ex rel. Thomas v. Ohio State Univ.*, 71 Ohio St.3d 245, 251 (1994) (concluding that an attorney acting pro se could not receive attorney fees under the Public Records Act (R.C. 149.43(C)); *Specht v. Finnegan*, 2002-Ohio-4660, ¶ 44 (6th Dist.); *Horenstein, Nicholson & Blumenthal, L.P.A. v. Hilgeman*, 2021-Ohio-3019, ¶ 220-221 (2d Dist.). This is because pro se litigants do not incur attorney fees as there is no attorney-client relationship. The Federal Circuit

21

Court of Appeals focused on the fact that "the word 'attorney' connotes an agency relationship between two parties (client and attorney), such that fees a lawyer might charge himself are not 'attorney fees.'" *Horenstein, Nicholson & Blumenthal* citing *Pickholtz v. Rainbow Technologies, Inc.*, 284 F.3d 1365, 1375 (Fed. Cir. 2002). Landers is not entitled to attorney fees.

{¶ 65} Finally, Landers asserts that the court erred by not awarding him pre- and post-judgment interest. As an initial matter, R.C. 121.22 does not provide for the award of pre-judgment interest. Pre-judgment interest is generally governed by R.C. 1343.03(A), which allows for such interest in cases involving money judgments arising from tortious conduct, contracts, and other transactions. The $1,500 award in this case is not from tortious conduct or contracts, and thus, the only way R.C. 1343.03 would apply is if the money judgment could be categorized as "other transactions." While that term is not defined in the statute, and Landers cites no authority which would elucidate its meaning, the term "transaction" is defined as the following: (1) "The act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract"; (2) "Something performed or carried out; a business agreement or exchange"; (3) "Any activity involving two or more persons"; and (4) "An agreement that is intended by the parties to prevent or end a dispute and in which they make reciprocal concessions." Black's Law Dictionary (12th ed. 2024). Based on that definition, pre-judgment interest does not apply. Post-judgment interest is not something the OMA contemplates, either. We, therefore, reach the same conclusion – post-judgment interest is not available to Landers.

{¶ 66} The trial court did not err when it failed to award attorney fees, pre-judgment and post-judgment interest, salary, and benefits. Landers' second assignment of error is overruled.

22

**V.     Conclusion**

{¶ 67} Because R.C. 121.22 does not contemplate back pay for violations of the statute, the trial court's judgment of $200,780.76 in favor of Landers is reversed. In all other respects, the judgment of the trial court is affirmed. However, the case is remanded to the VSC to re-deliberate and terminate Landers in compliance with the OMA.

. . . . . . . . . . . .

LEWIS, J., and HUFFMAN, J., concur.